COURT OF APPEALS OF WEST VIRGINIA.          543

Jan'y Term,        List, trustee, *et al.* *vs.* Cotts, trustee, *et al.*          1871.

# Charleston.

HENRY K. LIST, TRUSTEE, *et al.* *vs.* ISAAC COTTS, TRUSTEE, *et al.*

January Term, 1871.

A deed contains this grant, after a grant of a distinct parcel in fee simple, "also the right of digging for coal under the adjoining land lying east of said lot," (the lot conveyed in fee simple), and after describing it, continues, "together with all and singular the tenements, hereditaments and appurtenances to the said lot or parcel of ground belonging, with the right of digging for coal as aforesaid, except the right of ferry and the use of the river shore for the purpose of ferrying to and from the same at any place convenience may require." Also a covenant warranting the lot or parcel of ground, "with the right of digging for coal as aforesaid," to the heirs and assigns of the grantee, free from the claims of all persons whatsoever. HELD:

> That it is a conveyance of the absolute property in the coal, to the grantee, and he has the exclusive right to mine and remove the same.

The plaintiffs in the court below, Henry K. List, trustee, and his *cestui qui trusts*, Jas. C. Acheson, Joseph Bell, Wilber C. Brockunier, Charles W. Brockunier, Moses B. Cox, Thomas S. Acheson, Theophilus Pugh, John Voltz, Moses B. Cox, as trustee of Annie T. Cox, Ellen J. Cox, and Mary A. Creegan, J. C. Vanfossen, J. C. Acheson, as trustee for Mrs. D. Lynn, John Ebbert, Thomas H. Brashier, M. Chew, W. Morrison, Joseph Bell, as trustee for Mrs. Ann Coates, Henry Serig, A. Thalman, John Haberfield, John F. Baer, Geo. Casenbauer, D. R. Bell, Samuel Phipps, and Geo. Otto, filed their bill in chancery in the fall of 1867, in the circuit court of Ohio county, to perpetually enjoin the defendant, Isaac Cotts, trustee for the children and grand-children of Hugh Nicoll, deceased, from digging and removing coal,

lying under a certain tract or parcel of land containing about twelve acres, and which said tract or parcel of land is described and set forth on the following plat:

Deed, Exhibit D, grants Lot No. 3, absolutely, with the "right of digging for coal" between lines B D, and M F, back to the "easterly line" D E F.

The ownership of this coal, or rather the respective rights both of plaintiffs and defendants to dig and use this coal, constituted the *sole* subject of controversy in this suit; the plaintiffs claimed to be the owners of the coal, and that they had the *exclusive* right to dig and use the same; this the defendants denied, and claimed that they, or the trustee, Isaac Cotts, had a joint or equal right with the plaintiffs to dig and use the coal. The rights of the parties to this coal depended upon the true construction of the deed under which the *plaintiffs* claimed, and the true meaning or construction of this deed was the sole question decided by the circuit court, and was the sole question submitted for decision to this court.

Both parties, plaintiffs and defendants, claimed title under Jonathan Zane, who was originally the owner of a large tract of land, which included the piece D, E, F, G, I. The plaintiffs claimed under the deed made by the heirs of Jonathan Zane, and filed with their bill subsequent deeds; the defendants claimed under the deed made by Ezekiel Hildreth and wife, and filed subsequent deeds. The following is so much of the deed under which the plaintiffs claimed, as is necessary to show the grounds of controversy:

"Beginning at an old stump on the bank of the river Ohio,

near the mouth of a small run and corner to said Jonathan and Hugh Nichols' land, and running south 44 degrees west according to the meanders of the river, $34\frac{1}{2}$ poles to an elm; thence south 28 degrees east, 40 poles to a stone near a large Spanish oak—the bearing of said oak is N. 55 degrees east, 32 links; thence north 44 degrees east, $34\frac{1}{2}$ poles to the line between said Zane and George Knox, 3 poles below a large poplar tree; thence with the said line to the place of beginning, containing eight acres and 32 poles, be the same more or less:" "Also, the right of digging for coal under the adjoining land, lying east of the said lot or parcel of ground, and situate between the line of the said Knox and Zane's, and the south line of the lot aforesaid, continued to the easterly line of the said Zane's tract, together with all and singular the tenements, hereditaments and appurtenances to the said lot or parcel of ground belonging, with the right of digging for coal as aforesaid, except the right of ferry and the use of the river shore for the purpose of ferrying to and from the same at any place convenience may require.

" To have and to hold the said lot or parcel of ground, together with all and singular the tenements, hereditaments, and appurtenances to the same belonging, (except as above excepted), with the right of digging for coal as aforesaid, unto the said John Dulty, *his heirs* and assigns forever, to the only proper behoof of him, the said John Dulty, his heirs and assigns.

" And the said party of the first part, for themselves, their heirs, executors and administrators, do covenant and agree to and with the said John Dulty, his heirs and assigns, that they, the said party of the first part, the said lot or parcel of ground, together with all and singular the tenements, hereditaments, and appurtenances to the same belonging, or in anywise appertaining, (except as above excepted), with the right of digging for coal as aforesaid, unto him, the said John Dulty, his heirs and assigns, free from the claim or claims of all person or persons whatsoever, shall and will *warrant* and forever defend by these presents."

Entries for the purpose of mining and using this coal had been made by both the plaintiffs and defendants. Relying upon their construction of the deed, the plaintiffs filed their bill, and obtained an injunction against the defendants mining for said coal, and upon the final hearing of the cause, in February, 1870, the circuit court dissolved the injunction and dismissed the bill; and from the decree of the court, the plaintiffs appealed.

Hon. T. Melvin, judge of the circuit court of Ohio county, presided on the hearing of the cause.

*D. Peck* for the appellants.

What estate did the heirs intend to convey to coal under the land of Jonathan Zane, and what interest was conveyed by the terms of the deed? I contend that this conveyance passed to the grantee the whole of the coal under the tract mentioned, and was not a license to dig coal in common with the grantor or his assignee. For this construction I will give my reasons:

It is one deed; one consideration; and is included in the warranty, and it conveys the estate to the grantee, his heirs and assigns.

This deed reserves nothing in the granted premises to the grantor or to any one.

The right to dig and take away the coal is unlimited, both as to time or person, for by the terms of the deed the same could be assigned by the grantee to whomsoever he might think proper.

The cases cited in the circuit court, and on which it seemed the judge made up his opinion, were Lord Mountjoy's case, Godbolt, case 24; 2 Wallace, jr., 81; 2 Barn & Ald., 719.

I find this matter fully discussed in the case of *Caldwell* v. *Fulton*, 31 Pa. State Rep., 475, the same as 7 Casey, 475.

I propose to bring this case within the doctrine of that case. That case was error to the court of common pleas of Westmoreland county to the supreme court of Pennsylvania. It

was an action on the case by *W. S. Caldwell* v. *Robert Fulton*, for digging and taking 20,000 bushels of stonecoal from under his land. Woodward, Judge, delivered the opinion in 1855, and Strong, Judge, in 1858; for it was twice before that court.

The deed was dated the 27th of May, 1831, and acknowledges a consideration of 1,800 dollars; is to George Greer, his heirs and assigns, for all the therein "described property, situate on the east side of the Youghiogheny river," and then describes by metes and bounds two parcels of land, one of which contains six acres and 47 perches, the other ten acres and 50 perches. The grant of coal then follows in these terms: "Also, the full right, title and privilege of digging and taking away stonecoal to any extent the said George Greer may think proper to do or cause to be done, under any of the land now owned and occupied by the said James Caldwell; provided, nevertheless, the entrance thereto, and the discharge therefrom, be on the foregoing described premises."

In the *habendum* the property conveyed is called two lots or parcels of land, and the "aforesaid right to the stonecoal," and it is so designated again in the covenant of warranty.

The judge says: "The court below seems to have been at a loss whether to denominate the grant of coal in Caldwell's deed to Greer, a common ingross, or appurtenant, or a license, but was clear that it was not an absolute grant of all the coal under the plaintiff's land.",

"A license it cannot be. The form of the conveyance excludes that. License is defined to be a power or authority given to a man to do some lawful act, and is a personal liberty to the party to whom given, which cannot be transferred over, but it may be made to a man and his assigns: Tomlin's Law Digest. Because a mere license to occupy a privilege is not an estate therein, it may be granted without a deed, and even without writing, notwithstanding the Statute of Frauds."

"But here an estate or interest was evidently intended

to be conveyed, and it must have been either a corporeal or incorporeal hereditament.  Whether the one or the other, it was assignable by the very terms of the grant, but if incorporeal, I agree that it was not divisible.  Bell and McCune were capable of taking, as assignees of the original grantee, but they were bound to hold, enjoy and convey the hereditaments as an entirety, and when, by mutual conveyance, they parted into severalty, and extinguished thus each his moiety, they could no longer hold by entirety, and therefore could not hold at all.

"Lord Mountjoy's case, which has been often recognized as good authority, contains all the principles necessary for the decision of this case, if the thing granted be regarded as an incorporeal interest.

"The case as reported in Godbolt was thus: Lord Mountjoy, by deed, sold and conveyed the manor of Camford to Brown, in fee, with a proviso in the indenture that contained Brown's covenant 'that Mountjoy, his heirs and assigns, may dig for ore within the land in Camford, which is a great waste, and also to dig for turf there to make alum and copperas, without any contradiction of the said Brown, his heirs and assigns.'

"Three things were resolved:

"First.  That Lord Mountjoy could not divide the said interests so as to grant to one to dig in one parcel of said waste, and to another to dig in another parcel thereof.

"Second.  That notwithstanding the proviso, Brown, his heirs and assigns, owners of the soil, might dig there also; like to the common *sans nombre.*

"Third.  That Lord Mountjoy might assign his interest, but if there were several assignees they could not work severally, but must work together, with one stock, else there would be a surcharge to the tenant of the soil.

"The reservation in that case was very indefinite, to dig for ore and turf in a great waste to make alum and copperas.  There could be no livery nor corporeal tradition of the thing granted, and if the terms of Greer's deed import

no more than is contained in Mountjoy's reservation, Bell and McCune could work only with one common stock, and might not surcharge the owner of the surface by introducing an indefinite number of distinct operations.

"But was this grant of no more than an incorporeal hereditament? Caldwell reserved no interest himself. He sold for a valuable consideration all he had in the sixteen acres, and all coal in his other land. I say all, because the grant is limited to no time, or quantity, or purpose, or person. The full right to take stonecoal to any extent the grantee, his heirs or assigns, may think proper to do, or cause to be done, are not, perhaps, the best chosen words for describing the *corpus;* but what less than the whole of the coal can they be construed to mean? If not the whole, how much of the coal is granted? Can a reservation to the grantor be implied in the face of terms so large? That were to reverse the maxim that deeds are to be taken most strongly against the grantor. The will of the grantee was the measure of the grant. Not only he, his heirs and assigns, were to take *ad libitum*, but might cause to be taken without stint. The grantee might plant a miner on every available foot of coal, under that deed. There was only one condition, that the entrance to the coal, and the discharge therefrom, should be on the sixteen acres, and because this was expressed no other was intended. Subject to that condition alone, the grantee was invested with complete dominion over the coal. What room was left for the grantor? Might he too mine coal? Assuredly not, against the consent of his alienee, for he had sold all the coal that the alienee might think proper to take, or cause to be taken. And if the grantor might not mine of right, then the grant was total; he might not take a part, because he had conveyed the whole. There are many untechnical words, which, receiving an interpretation according to substance, are held to vest effectual estates. Thus a grant of the profits, or income, or rent and issues, or acceptation and profits, or free use, or the right to dispose of, or to give or

sell, or to dispose of at will or pleasure, or to do his will
therewith, or to be at his discretion, or to be freely his, or
enjoyed, are sufficient to pass the title out of which such
rights are to flow, or over which such powers are given,
where no evidence of a contrary intention is furnished by
the instrument itself. 1 Salk., 228; 5 Mod., 63, 98, 101; Cro.
Elis., 190; Cro. Jac., 104; Plowd., 541; 9 Mass. Rep., 372. It
was in relation to such grants that Gibson, C. J., said in *Morris*
v. *Phelan*, 1 Watts, 390, 'it is an undoubted rule that the be-
quest of a general power by disposal, carries the absolute
property, whenever a limited interest is not given. For such
a power being a principle of ownership, necessarily implies
the existence of it whenever the implication is not rebutted
by the special interest inconsistent with it.'

"These are principles in the construction of wills, but
equally applicable to deeds, except in those instances where
inflexible rules of law demand certain words of perpetuity
to create more than estates for life. For these reasons,
drawn both from an analysis of the deed itself, and from the
principles of interpretation, as applied to written instu-
ments, we conclude that Caldwell sold and conveyed to
Greer the absolute and exclusive right to all the coal under
his land; and from this it must necessarily follow, it was a
corporeal and not incorporeal interest. An exclusive right
to all the coal to be taken, to be taken without limitation,
except as to the point of ingress and egress, is a sale of the
coal itself; and there is nothing incorporeal about coal. It
is included in the definition of land, and those heredita-
ments only are incorporeal which are not land. Rent is the
best definition of an incorporeal hereditament; it issues out
of the thing corporate, but is no part of it. The thing is
as perfect after rendering the rent as before. So common
of pasture is a right issuing from the land, without diminu-
tion of the source; common of estovers or turbary, and of
coals, are not strictly incorporeal, for they are not so much
the produce of the land, annually renewable, as they are a
part of the land itself. But these are always appendant or

appurtenant to a particular tenement, and, as a classification, connot comprehend coal mines which are worked for trade and profit. And to none of these distinctions in the law of common can this grant be referred, if we are right in holding it to be exclusive in the grantee and his assigns. It is their close as much as if it were land. This point was ruled in *Wilson* v. *Mackeath,* 3 Burr., 1825. The action there was trespass for entering plaintiff's close, and digging and carrying away turf and peat. The objection was raised that the remedy should have been case, as the plaintiff did not own the soil. But all of the judges held that the action would lie because the plaintiff had an exclusive right to the turf and peat.

"Can it be doubted that these defendants might maintain trespass and ejectment against intruders into their mines? It has been often ruled in England, that trespass and ejectment will lie in respect to open coal mines, for these can be possessed, but mines not opened, when held by another than the owner of the soil, are sometimes said to be incorporeal, because they lie in grant, and are not susceptible of livery of seisin. With us, delivery and registration of a deed stand in lieu of livery, and there is no ground or reason for maintaining an embarrassing distinction to this very important kind of property."

"It is a common thing in the mineral districts of Pennsylvania, for the surface to belong to one owner, and the coal which it covers to another."

"Both the surface and the coal are held by deeds, executed and delivered and recorded in the same manner; and there is no more reason for considering the coal an incorporeal hereditament, because it has not been opened, than there is for considering the soil as such, because it has not been ploughed. Still less reason is there for calling it an incorporeal hereditament, if the deed happens to describe the grant as a right to enter, dig and carry away all the coal, instead of describing the coal without the customary circumlocution."

"In all these cases, where the right, rather than the thing, is described, nobody is at a loss to know what is intended to pass. It is the thing that is bought and sold, and where that is a coal bed, it is an abuse of language, and an unnecessary application of legal distinctions, to call it an incorporeal hereditament."

"It may be thought somewhat incongruous to apply the name of land to both surface and the underlying mineral strata, where they have been severed in title; but it is more incongruous still to treat the surface as a corporeal hereditament, and the mere right, when granted in terms so large as to comprehend the whole mineral deposit, as incorporeal."

"We hold, in conclusion, that the parties to the deed of May 27, 1831, intended an absolute and exclusive grant of all the coal under the grantor's land; that though severed from the surface, it was still a conveyance of land, and not a mere license of common."

Strong, Judge, in reviewing the opinion delivered by Judge Woodward, says: "The consideration mentioned is single for the entire subject conveyed by the deed. It is to be observed that in the description of the thing granted, there are no limits fixed upon the extent to which the coal might be taken from the land then owned and occupied by the grantor. The grantee's right was co-extensive with his will; not necessarily to be exercised by himself, but one which might be enjoyed by others whom he should authorize. No form of words, other than those employed, could have given him larger dominion."

"Applying these principles to the case in hand, why was not the deed of Caldwell to Greer a conveyance of the coal in the land owned and occupied by the grantor? Because, says the plaintiff in error, it is not a grant of the thing itself, but of a right *to take it*, and until it is seized or taken, the property in the thing remains in the grantor. But if the conveyance of the whole use of a thing, and of the absolute dominion over it, is a grant of the thing itself, only differing in the mode of describing the subject, it is not easy to

see what more Caldwell could have sold than he did.  If in another form of words he had described the coal as the subject of the grant, Greer would have possessed no greater beneficial rights than were given him by the form adopted."

The ownership of the coal in the ground is but a "full right, title and privilege," to dig and carry away; nothing more, nothing less.

"The words employed in the deed express absolute dominion, and complete enjoyment.

"Again, says the plaintiff in error, this is but the grant of a right to take and carry away part of the profits, and that while a grant of the right to take all the rents, issues and profits of a tract of land, is equivalent to a conveyance of the land itself, because it embraces their whole usufruct, a grant of a right to take part, such as iron ore, coals or minerals, is not.  It is said in such a case the grantee can only take in common with the grantor.

"The argument is based upon a misconception.  The subject alleged to have been granted here is not the tract of land, but the coal in it, which, as we have seen, is capable of a separate conveyance, and which may be vested in one person, while the ownership of the tract of land, as such, may be another's.  The alleged subject of the grant then being the coal in the land, the *substratum*, the argument is inapplicable."  "It would seem, therefore, that, according to well established rules of construction, the deed of Caldwell to Greer was a conveyance of the coal itself, and not a mere easement, or incorporeal hereditament.

"It is contended, however, that such a construction is in conflict with the authorities, and we are referred to Lord Mountjoy's case as the leading and principal one.  That was decided in the reign of Elizabeth, and is reported by Godbolt, case 24; by Leonard, 4 Leon., 147; by Coke, Co. Litt., 1046; and by Moore.  It is however, more fully reported by Anderson, C. J., who was one of the justices who decided it.  In his report, page 307, we have the words of the reservation given at length.  They are: 'Provided al-

ways, and it is covenanted, granted, concluded and agreed between the said parties to this indenture; and the said John Brown and Charles, and their heirs, covenant and grant to and with the said Lord Mountjoy, his heirs and assigns, by these presents, in form following, that is to say: That it shall be lawful for the said Lord Mountjoy, his heirs and assigns, at all times hereafter to have, take, and dig, in and upon the heath ground of the premises, from time to time, sufficient ores, heath, turves, and other necessaries for the. making of alum and copperas.' This was very properly held to have been a grant of an incorporeal hereditament.

"Unlike the case we have under consideration, it was not a grant of unlimited dominion over the ores and turf. It was not a grant of a right to dig and take, and carry away without stint, but only for a single specified purpose, viz: the manufacture of alum and copperas. It was very aptly likened to a grant of common *sans nombre*, but was not an exclusive right. Surely there is very little resemblance between that case and the present. It is not at all in conflict with the construction we place upon Caldwell's deed to Greer.

"Then follows the case of *Cheatham* v. *Williamson*, 4 East., 469, where the subject was not described in the granting part of the deed, nor in connection with the other property conveyed. The grantee, after the *habendum*, covenanted that it should be lawful for Hyde, one of the grantors, and his heirs, at all times to enter into all or any part of the premises to search for and dig for. coal or stone, or any other mine or mineral whatsoever, and the same to take and carry away to his own use, provided and upon condition that it should and might be lawful for the grantee, his. heirs, &c., to deduct from the rent reserved by the grantor of the land, all or so much as should be reasonable, for any hurt, damage, or prejudice, that should be done to. the premises, by reason of digging for, or carrying away any of the mine or mines aforesaid. The question was whether the alienee of Hyde, one of. the grantors, and who had con-

veyed only an equity of redemption, could maintain trover against the covenantor for coals taken out of the land by him.   It was held that he could not.

"Lawrence, Judge, placed the judgment upon the ground, that the covenant could not operate as an exception or reservation in favor of Hyde, who had no legal estate in him at the time, but only the equity of redemption.   He said that Hyde 'being a stranger to the estate, he could not except or reserve that which he had not before.  The covenant, therefore, could only operate as a grant, but a grant will not pass the land itself, without livery.'   Lord Ellenborough confined his attention to the question whether the grant was exclusive.   The differences between this case and the present one are sufficiently obvious.

"It is one very material distinction, that in *Cheatham* v. *Williamson*, the right to take coal or minerals was not a thing for which the consideration mentioned in the deed was given.   They were to be paid for when taken.   In a deed of bargain and sale, it is the payment of the consideration which transfers the use, and with it the legal title.   The case is also illustrative of the fetters which the doctrine of livery of seizin has imposed upon the construction of deeds.

" The only other case to which we are referred, is *Grubb* v. *Bayard*, 2 Wallace, jr., 81.   There the grant was to dig, take and carry away all iron ore to be found within the bounds of a tract of land of the grantor, provided the grantee should pay unto the grantor, his heirs and assigns, the sum of sixpence for every ton taken from the premises. This was held to be an incorporeal hereditament.   It will be observed that there was no present consideration passed, nor was there a covenant of the grantee to search for or take any ore.   He might never have taken any.   In that event, if the deed had been held a conveyance of the iron ore, there would have been a sale without consideration.   Nor was it a grant of the whole, but, said Mr. Justice Grier, of the iron ore that should be found, within the term, and on that account was but a license.   He also remarked that 'if

it had been a grant of an absolute property in all the iron ore in the tract, the deed would have been insufficient to convey the title without livery of seisin.' This observation goes beyond the English case, and is not necessary to the judgment rendered. In *Grubb* v. *Bayard*, Judge Kane delivered a concurring opinion. In it he refers to the absence of a covenant by the grantee to work the mines, and thus make the rent reserved of value, as a circumstance of much importance in determining the intentions of the parties. That it is so, is obvious, for without it, the contract might have proved entirely fruitless to the vendor, while in the present case, Caldwell has received all that he ever can receive. The right, whatever it is, is one for which all the consideration has been paid.

"These are all the cases adduced to sustain the doctrine that a conveyance of a right to dig, take and carry away the coal or minerals in a tract of land, though the grant be unlimited in quantity, time and purpose for which the minerals may be taken, conveys no interest in the coal or minerals until they are taken, passes only an incorporeal hereditament. None of them were decided upon the ground of any supposed distinction between a right to take all the coal and carry it away, and a right to the coal itself. They are all cases in which there was no unrestricted power of taking and disposition conferred upon the grantee. The coal or minerals was to be taken either for a limited purpose or in restricted quantities, and generally was not to be paid for until taken. And in most of them it is easy to see that the supposed necessity of livery of seisin, in order to pass a corporeal interest in land, was the controlling consideration in the minds of the judges. Even in *Grubb* v. *Bayard*, it seems not to have been without influence. The impossibility of making livery is, however, in Pennsylvania, no reason for refusng to give a construction to a deed accordant with the intention of the parties. When the intention is to give the entire usufruct and power of disposal, the legal title must be held to pass."

"Thus, after a careful review of the question, we are constrained to hold that, by the deed from Caldwell to Greer, the title to the coal in the lands then owned and occupied by the grantor was conveyed, and not a mere license or incorporeal right. Such was the opinion of this court in 1855, when the same deed was here for construction, and the very able argument of the counsel for the plaintiff in error has failed to convince us that the court was then mistaken."

I have quoted thus largely from the case of *Caldwell* v. *Fulton*, because I believe that case contains the principles which must govern the case under consideration, and the subject is most ably discussed by two of the best judges who ever sat on the bench of the supreme court of Pennsylvania.

In the case of *Caldwell* v. *Fulton*, the words of the conveyance of the coal, I think, were in substance the same as are contained in the deed of Jonathan Zane's heirs to John Dulty. The deed of Caldwell to Greer conveys for one consideration the sixteen acres on the east side of the Youghiogheny river, in whole, and the grant of the coal thus: "Also, the full right, title and privilege of digging and taking away stonecoal to any extent the said George Greer may think proper," but holds him to take the coal out on his own sixteen acres.

In the *habendum* it is described: "and the right aforesaid to the stonecoal," and it is designated in the same manner in the clause of warranty.

Now, how is it described in our deed? After the description of the eight acres by metes and bounds, it goes on: "Also, the right of digging for coal under the adjoining land east of the said lot or parcel of ground, and situate between the line of the said Knox and Zane and the south line of the lot aforesaid, continued to the easterly line of the said Zane's tract." He excepts the right of ferry on the eight acres.

In the *habendum*, the deed contains: "to have and to hold

the said lot or parcel of ground, together with all and singular the tenements, hereditaments and appurtenances, with the right of digging for coal as aforesaid, unto the said John Dulty, his heirs and assigns."

Then the warranty contains the following clause: "do covenant and agree to and with the said John Dulty, his heirs and assigns, that they, the said party of the first part, the said lot, &c., with right of digging for coal as aforesaid, unto him, the said John Dulty, his heirs and assigns, free from the claim or claims of all person or persons whatsoever, shall and will warrant and forever defend by these presents."

In the Caldwell case, Greer had the right to dig and carry to any extent, and in this case, the deed gives the right of digging for coal under a specified tract of land, without limit. The deed is not as full as the Caldwell deed, but does it not cover quite as much? I apprehend the grant of the right to dig, gave the right to carry away, for without that the right to dig would be of no avail. And although this deed has not the words in the other deed, to "any extent," yet there is no limit but the line of the tract mentioned.

Not only is the right to dig and carry away unlimited, but it is warranted to John Dulty and his assigns, against every one! This is a strange way to grant an incorporeal interest in a coal bank.

More than this, it is notorious that the coal is a stratum about six feet thick and extending over the whole country, that it is a very expensive affair to open a coal bank, and that it would be impossible for two having adverse interests to operate it together.

Now, if the grantor has the right to dig for coal in this same vein, how much has he the right to take out? Can he not take it all if he should choose? Where is the limit to his digging, and what becomes of his covenant of warranty?

If the grantee should take all of the coal out, what

ground of complaint would the grantor have? It is absurd that two persons could have an unlimited right to dig coal in the same specified tract of land under the circumstances, and so thought Hugh Nichols, the owner of the surface all his life, and it was reserved for the ubiquitous Isaac Cotts to discover the contrary.

"A deed, especially a deed poll, is always construed most strongly against the grantor." *Jackson* v. *Blodgett*, 16 Johns. Rep., 178. The judge in this case (Spencer,) quotes Shepherd's Touchstone with approbation.

"Where a deed may enure in different ways, the person to whom it is made shall have his election which way to take it, and may take it in the way as shall be most for his advantage."

"Every uncertainty is to be taken in favor of the grantee." Coke on Littleton, p. 183.

In the language of Lord Coke: "And the reason of this is, for that it is a maxim in law, that every man's deed shall be taken by construction of law most forcibly against himself."

Neither the grantee nor grantor had any coal beyond, as it was bounded by Knox on the north, and run the length of the grantor's land on the east. He did not reserve any of the coal, nor can we gather from the deed that he intended to do so.

"Another rule of construction is, that when the words of a grant are ambiguous, the courts will call in aid the acts done under it, as a clue to the intention of the parties. 16 Johns., 22; 3 Atk., 576; 10 Vesey, 338; 7 East., 199; 4 East., 327; 8 Bing., 181. Upon this principle we are permitted to look at the undisturbed use of the right contested on the one side, and the unqualified acquiescence on the other, down to the time of the plaintiff's purchase of the premises in 1837; and these circumstances are also justly entitled to weight in the construction of this reservation." *French* v. *Carhart*, 1 Comst., 101.

Taking this case, under all its circumstances, it seems to

me that it was the intention of the deed of 1826 to convey the coal, and not a mere incorporeal right to dig some of it in common with the grantor.

The possession of it was undisturbed for forty years, and a part of that time the matter was most forcibly called to the attention of the owner of the surface.

*Lamb & Paull,* for the appellees.

To invest the plaintiff with an exclusive right to the coal under said land, the property in the coal itself should have been granted to them; and the right of digging and removing the same would have followed as a legal incident; but on reference to the granting part or clause of the deed, it is found that this is not the case; on the contrary it is simply the right of digging for coal, which is granted, and this cannot be enlarged into an ownership of the coal itself, until the same has been dug and removed; such a grant as is contained in this deed, is a mere license, and is entirely consistent with the right of the grantor or his assignees to exercise the same right of digging and removing coal from the same land. This, we maintain on general principles, would be the sole legal effect of the language contained in the deed. These words, however, have received a judicial interpretation, in the English and American courts, and to these decisions attention is invited. The first is Lord Mountjoy's case, reported in Godbolt, and referred to in Thomas' Co. on Littleton, vol. 1, p. [688] 793, *et seq.* In the deed in this case, the language was, that "Browne (the grantor) did covenant and grant to and with the Lord Mountjoy, his heirs and assigns, that the Lord Mountjoy, his heirs and assigns, might dig for ore in the lands, (which were great wastes) parcel of the said manor, and to dig turf also, for the making of alum." It was held by all the judges "that this did amount to a grant of an interest and an inheritance to the Lord Mountjoy, to dig, &c.; secondly, that notwithstanding this grant, Browne, his heirs and assigns, might dig also, and like to the case of *common*

*sans nombre.*" The above is the language of the court as found in vol. 1, of Thomas' Co. Lit., as aforesaid.

The next case to which we refer, as settling the construction of such language in a deed, is found in 4 East's reports, p. (469) 468. The language of the syllabus in that case is as follows: ,'C. covenants with and grants to B. that it shall be lawful for B., his heirs or assigns, at all times to enter upon the lands to search out and dig for coal, and to take and carry away the same to his and their own use. This is only a license, and conveys no interest in the soil, so as to exclude C, and those claiming under him, from getting coal there." Lord Ellenborough, in delivering the opinion of the court said: "Even if E. Hyde had been seized of the legal estate, which he was not, yet the liberty reserved of digging for coals, could not give him the exclusive right to them. No case can be named where one who ·has only a liberty of digging for coals in another's soil, has an exclusive right to the coals, so as to enable him to maintain trover against the owner of the estate for coals raised by him. The case of Lord Mountjoy, as cited from Anderson, is decisive against the plaintiff; and still more as it is reported in Godbolt (a), which is directly in point. Those who compared it to a grant of *common sans nombre,* used that as the strongest instance to show that it could not be an exclusive right."

We refer to only one other English authority settling the same construction of such language in the deed. This case is found in 2 Barn. & Ald., 4 Eng. Com. Law Reps., 719. Here a party granted unto the grantee, "his partners, fellow-adventurers, executors, administrators, and assigns, free liberty, license, power and authority to dig, work, mine and search for tin, tin ore, &c., and all other metals and minerals whatsoever, throughout all that part of the lands of Thomas Carlyon, commonly called Crinnis, therein limited and described;" there were other provisions in this deed, and other questions decided by the court, but as to the above language, Chief J. Abbott said: "It is our opinion that this

deed operates as a license only." He then sets forth his opinion at length, and referring to the cases hereinbefore mentioned, we beg leave to call attention to his opinion upon the rules of construction, in the following language, on page 727: "But whatever doubts these expressions may cost, yet we think they are not sufficient to vary the construction that must be given to the words of the granting part of this deed, as those words are, in themselves alone, plain and not of doubtful import, and as the proper office of that part of the deed is to denote what the premises or things are that are granted, and is the place where the intent of the grantor and what he has actually done in that respect, is more particularly to be looked for, recourse must be had to the proper and efficient part of the deed, to see whether he has actually granted what it is urged his expressions denote that he supposed that he had granted; for the question properly is, not what he supposed he had done, but what he really has done by his grant." In the deed exhibit D., now under consideration before your honors, there is in the granting part, and in every other, no doubtful or ambiguous language; the meaning is plain beyond all question; what is actually granted is explicitly and clearly expressed. With these English authorities, the American entirely concur, in settling the construction of such a deed as exhibit D. The court is referred to the case of the *Johnstown Iron Company* vs. *Cambria Iron Company*, in Pennsylvania Reports, Vol. 32, page 241. The language of the grant in that case was as follows: "The privilege of raising iron ore on his fields at twenty-five cents per ton, and also the privilege of raising the iron ore on his woodlands at the same price, and to give the privilege to none else." The grantees of this privilege, or their assigns, filed their bill in equity, to restrain the grantor or his assigns from digging, mining, or taking away ore, &c., just as was done in the case now before this court; Woodward, J., delivering the opinion of the court, said "that such a right was not exclusive in the grantees, but was to be enjoyed in common with the grantor, his heirs and assigns, has been held from

all the cases from that of Lord Mountjoy, best reported in Godbolt, down to *Grubb* v. *Guilford*, 4 Watts, 224, and *Grubb* v. *Bayard*, 2 Wallace, p. 100." The case in 4 East is also quoted. Upon this construction of the grant, the bill of the plaintiffs was dismissed.

We refer the court also to the case of *Gillett* v. *Tregarza*, 6 Wisconsin, 343. We have not now this volume before us, but it was cited and commented on in the court below. According to our present recollection, the language contained in the deed which was considered by the court in 6 Wisconsin, is precisely the same with that found in exhibit D., to wit: "the right of digging for coal," and it was held to be no exclusive grant, but left the same right in the grantor and his assignees.

The attention of the court is particularly invited to these American authorities. We have not been able in our search, to find any authorities which in any manner or degree, impeach the soundness of the construction thus established. The views and authorities presented, we think, are sufficient and conclusive upon this point.

The attention of the court is now asked, very briefly, to the assignment of errors made by the plaintiff's counsel, as they appear in the printed record.

As to the first, the order of injunction was made by the judge of the circuit court of Ohio county, and provided that the same should continue in force "until the further order of the circuit court of Ohio county," or the judge thereof in vacation, may be had in this cause. Again, the 4th section of chapter 133, of the Code of West Virginia, p. 631, expressly confers all necessary jurisdiction on the circuit court: its language is, "jurisdiction of a bill for an injunction to any judgment, act or proceeding, shall be in the circuit court of the county in which the judgment is rendered, or the act or proceeding is to be done, or is doing, &c." The circuit court was certainly invested with the right or power to dissolve the injunction upon the hearing, if in its judgment the merits of the case so required.

As to the 2d error assigned, we think it founded in a misconception; the court did settle the rights of the parties to the said coal so far as it was practicable or proper to do so. The bill claimed that the plaintiffs had an exclusive right to certain coal, and prayed that the defendants be perpetually restrained from digging the same, and that the plaintiff's right and title to said coal be adjudged to them. This is the whole object of the bill, (except that it prays that an account may be taken of the coal previously mined and removed by the defendants.) The court however found no such rights in the plaintiffs as they claimed, and that they had no right to restrain the defendants from digging coal, a right equally belonging to them as well as to the plaintiffs; what more could or should the court, under the frame and object of the bill, have done, than simply enter a decree dissolving the injunction and dismissing the bill, and thus leaving the parties to carry on their mining operations thereafter, as they had been doing before. The right of digging for coal is the right of both parties, and to the enjoyment of this right both are left by the decree: neither party has any ownership or property in the coal itself; it is simply a license, and we affirm that no court, even upon a bill filed for the express purpose, could make any decree of partition between the parties. See Lord Mountjoy's case, hereinbefore mentioned, on page 794 of vol. 1 of Thomas' Co. Litt. So also in the case of the Johnstown Iron Co., in 32 Pennsylvania, hereinbefore cited, the supreme court dismissed the plaintiff's bill, making no further settlement of the rights of the parties. The court could not, under this or any other bill, undertake to say how or in what manner or degree the parties should exercise their respective rights; that is a matter for themselves, and to be determined by their own arrangements. Certainly under this bill at least, no further adjudication of their rights could be made.

BERKSHIRE, *President.*

The only question presented by the record for our con-

sideration, is the construction of the deed from the heirs of Jonathan Zane to John Dulty, of the 12th of January, 1826.

As derivative purchasers under this deed, the appellants claim the coal in controversy. The appellees claim their right to it, as derivative purchasers, under the deed of the 28th of January, 1826, from Ezekiel Hildreth and wife, to John McLure and others.

Both parties claim title under Jonathan Zane, the original owner of the land, covering and embracing the coal now in dispute. It is conceded that the appellants have regularly derived their right, (whatever it may be), from the grantees, in the deed first named, and that the appellees have in like manner, derived their title to the land in fee simple, under which said coal is located, from the grantees in the latter deed.

The appellants contend that the deed under which they claim, conveyed a corporeal hereditament and the absolute *property* in the coal; while on the other hand, it is insisted by the appellees, that an incorporeal hereditament, or license to *dig* coal *only*, was conveyed, and that, consequently, an *equal* right and privilege to dig was reserved by the deed to the grantors therein; which right and privilege passed with the land, and vested in them by the several conveyances under which they claim. The appellees, in support of their right, rely on Lord Mountjoy's case, 1 Thomas' Co. Litt., 688, (but reported, it is said, Godbolt 17,) *Chetham* v. *Williams and others*, 4 East, 468–9; *Doe* v. *Ward*, 2 Barn. & Ald.; (4 English Common Law Reports, 719.) *Johnstown Iron Co.*, v. *The Cambria Iron Co.*, 32 Penn. Reports, 241; and *Gillett* v. *Tregarza*, 6 Wisconsin Reports, 343; and insist that this case belongs to the class of cases just cited, and that consequently the deed ought to receive a like construction.

On the other hand, the appellants rely on the terms of the deed, under which they claim, and the case of *Caldwell* v. *Fulton*, 31 Penn. Reports, 475, and maintain that this case in every essential respect, is like the case of *Caldwell* v. *Fulton*,

and must, therefore, be governed by the principles of that case, in the interpretation of said deed.

After a careful review of all the authorities cited and relied on, my conclusion is, that the doctrine affirmed in the case of *Caldwell* v. *Fulton*, is founded in obvious reason, and is peculiarly appropriate to the present age, and the condition, business, and especially the mining and manufacturing interests of this country; and I fully concur in the cogent and conclusive reasoning, by which the eminent judges who delivered the opinions of the court, sustained and fortified their conclusions. If, therefore, the deed in the case now under review, imports as much as the deed in that case, it must, in my judgment, receive the same construction.

The deed in that case was from James Caldwell, then the owner of the *locus in quo*, to George Greer. It was for a small tract of sixteen acres of land, described by metes and bounds, and after giving the boundary, the grant of the coal right follows, thus: "Also, the full right, title and privilege of digging and taking away stonecoal to any extent the said George Greer may think proper to do, or cause to be done, under any of the lands now owned by the said James Caldwell; provided, nevertheless, the entrance thereto, and the discharge therefrom, be on the before described premises."

The case was first before the supreme court of Pennsylvania, in 1855, and is reported in 7 Casey. The opinion of the court was then delivered by Woodward, J. It was afterwards brought under review upon a re-argument, before the same court, and the opinion of the court, delivered by Strong, J., and the case is now reported in 31 Penn., before cited.

It was insisted in that case, by the parties claiming under Caldwell, the grantor, as it is claimed to be the case by the appellees here, that the deed granted only a mere *license* or liberty to dig for the coal, leaving in the grantor a concurrent right to do likewise. On the other hand it was maintained by the claimants, under Greer, the grantee, that

the deed conveyed the absolute *property* in the coal, reserving no interest or right in the grantor whatever. The court, after full consideration, and upon an elaborate and exhaustive re-argument, adopted the latter view, and sustained the rights of the claimants under the grantees of Greer. In each of the very lucid opinions delivered by the eminent judges, who pronounced the opinions of the court, Lord Mountjoys's case, and the other authorities, cited by the appellees here, were ably reviewed, and while approved as sound law, they were shown to be clearly distinguishable from the case of *Caldwell* v. *Fulton.* And it was accordingly held that, while the grant in the former cases conferred on the grantees a license or privilege *only* to dig for the minerals in common with the grantors, the grant in the latter case was total and *exclusive,* and vested the entire *property* in the coal, in the grantees.

The material question, therefore, recurs: Is the grant in the case of *Caldwell* v. *Fulton, larger* or *more* comprehensive than the grant in the deed now under consideration? In my judgment it is not. If not strictly identical the resemblance between the two cases, in all their material facts, appears to me to be so complete, that it would seem very difficult to suggest any material variance.

In this case, as in that, the grant is *general.* The grantee was to take *ad libitum,* without restriction or reservation. And it is not seen how he could be restrained by the grantors, or what could have prevented him from opening, at once, a mine on every available part of the boundary designated in the grant to the exclusion of the grantors.

The rights of the grantees here would not be enlarged by the addition of the terms, "to any extent the grantee may think proper," &c., which were superadded to the grant, in the case of *Caldwell* v. *Fulton,* that is clearly implied in the general grant; and it seems to me the grantors, and those claiming under them, could not be heard to gainsay the right of the grantee, and those claiming under him, to dig the coal, within the designated boundary, to any extent they

might desire, *their* wishes, as in *Caldwell* v. *Fulton,* being the measure of their *rights* in the premises, which rights, as in that case, are unlimited as to "quantity, time, person or purpose." Again: The rights of the grantee in this case, as in that, were assured to him by all the solemnities of a regular conveyance.

In that case, as we have seen, the conveyance was for a small tract of land of sixteen acres, (including the surface and the coal under it,) together with the right to dig and take away the coal under certain lands adjoining it. Here the conveyance is of a small tract of about eight acres, with the right to dig the coal under a certain boundary of land, also owned by the grantors, adjoining the eight acres conveyed absolutely.

In the construction of this deed, therefore, it must be observed that the same terms that are employed to denote a *fee simple* estate in the eight acres, apply equally to the grant of the right to the coal, and there is certainly nothing in the deed that would imply that a *less* estate was intended to be granted, and it is, therefore, I think, within the purview and spirit of the statute. 1. Rev. Code, s. 27, p. 339, in force at the time thereof. In the *habendum,* or granting part, the language is, that the grantors "do grant, bargain, sell and convey unto the said John Dulty, his heirs and assigns," &c., (and after describing the eight acre tract by metes and bounds;) "also, the right of digging for coal under the adjoining land lying east of the said lot or parcel of ground," &c., (and after setting on the boundary,) "together with all and singular the tenements, hereditaments, and appurtenances to the said lot or parcel of ground belonging, with the right of digging for coal, as aforesaid." In the *tenendum* the words are "to have and to hold the said lot or parcel of ground, together," &c., "with the right of digging for coal, as aforesaid, unto the said John Dulty, his heirs and assigns forever, to the only proper *use and behoof* of him, the said John Dulty, *his heirs and assigns forever.*" And in the warranty clause of the deed, not only the eight

acre tract, but the right to the coal as well, is expressly warranted to the grantee, Dulty, and his *heirs and assigns*, against the rights or claims of *all persons* whatsoever, the grantors, and all persons claiming under them being, as I think, necessarily included. Looking to the face of the deed, therefore, it appears to me, it may be clearly implied, that the grantors intended to grant the fee simple or absolute property in the coal, as well as in the eight acre lot, so conveyed in terms; and the implication is certainly not rebutted by anything found in the record, but on the contrary, is rather confirmed, by the long acquiesence in the right of the grantee, and those claiming under him, by the grantors, and those claiming under them.

The case of *The Johnstown Iron Co.* v. *The Cambria Iron Co.*, 32 Penn. R., 241, was decided by the same court that had decided *Caldwell* v. *Fulton*, and the opinion of the court was alse delivered by Woodward, J. The case was distinguished from *Caldwell* v. *Fulton*, and it was held that it belonged to the other class of cases reviewed in that case.

It was argued by the counsel for the appellees, that each of the parties, in this case, have the right to dig for the coal in controversy; but that *neither* party has any *ownership or property* in the coal itself, but simply a license to dig for the coal. I realize much difficulty in perceiving how the learned counsel could make good his proposition. It is conceded that the absolute property in the coal was in the original grantors, (Jonathan Zane's heirs,) before and at the time of the conveyance to Dulty. It must be clear, therefore, that it was either divested by such conveyance, or it remained in the grantors. If divested, as I think it was, it is equally clear it must have vested in the grantee, Dulty. It could not be destroyed! It cannot be, I take it, that the *fee* in the coal was thereby cut loose, and sent adrift; and became from thenceforth, (if the term may be allowed,) a mere waif without an owner!

It was further suggested by the same counsel, that the right of the parties to the coal in dispute, (on their theory,)

is incapable of partition or judicial interpretation; and as the proper limitations to such rights could not be indicated or fixed by a court of equity, on a bill for that purpose, the parties should be left to the enjoyment of their respective rights, as best they might, according to their own arrangements. But do not the very difficulties suggested rather furnish a persuasive argument against the construction contended for? Ought a construction which would vest in parties rights that would be incapable of being defined or settled by a legal process, and which must consequently lead (as the sequel to this case would show) to perpetual conflict and confusion without any possibility of being adjusted by any *legal* proceedings, to be adopted, while any other rational interpretation could be given to the deed or instrument creating such rights? It appears to me not, and that the construction which I have been compelled to adopt of the deed in this case, is the only reasonable one that can be given to it.

My conclusion therefore is, that the decree complained of is erroneous, and ought to be reversed, with costs to the appellants here, and in the circuit court, and the injunction perpetuated.

The other Judges concurred.

DECREE REVERSED.