# CHARLESTON

HIGGINS v. ROUND BOTTOM COAL & COKE CO.

Submitted June 15, 1907.    Decided December 17, 1907.

1. DEEDS—*Validity—Construction.*

   A deed or other instrument, susceptible of two or more interpretations, and which would be invalid, as violative of some rule of law, if interpreted in one of the ways, justified by its terms, should be so construed as to make it valid and effective, it being presumed in law that the parties thereto did not intend, in making the contract, to do a vain thing. (p. 221.)

2.  Same—*Intention*.

A clause in a deed, unskillfully prepared, apparently making the vesting of a right, as to the intention to grant which the terms used leave no doubt, dependent upon a condition precedent so remote as to make the limitation obnoxious to the rule against perpetuities, but susceptible of a construction that will avoid such result, should be so construed as to make it valid and effectuate the intention of the parties.   (p. 222.)

3.  Mines and Minerals—*Deeds—Construction—Effect*.

A deed, granting, by metes and bounds, a small parcel of land out of the northeastern corner of a large tract, known to contain coal, and "also the privilege, should" the grantee, "his heirs or assigns, open a coal mine on said (granted) tract of land of undermining southward beyond the lines of said tract of sd. land so far as not to injure the tract of land of which this was a part, and now taken from," conveys title to the corpus of the coal in the residue of the tract of land, lying southwest, as well as south, of the granted parcel, and withholds the right to make openings on such residue for mining purposes, by prescribing the mode of removal of the coal to be by means of an opening to be made on the parcel granted.   (p. 224.)

4.  Same.

Principles declared in *List, Trustee,* v. *Cotts, Trustee,* 4 W. Va. 543, approved and applied.   (p. 225.)

Appeal from Circuit Court, Marshall County.

Suit by John Higgins against the Round Bottom Coal & Coke Company.   From decree sustaining demurrers to plaintiff's original and amended bills, he appeals.

*Reversed.   Remanded.*

Robert White and D. B. Evans, for appellant.

Simpson & Showacre and Charles McCamic, for appellee.

Poffenbarger, Judge:

John Higgins has appealed from two decrees of the circuit court of Marshall county, sustaining demurrers to his original and amended bills, seeking adjudication in his favor of title to the coal in a certain tract of land.

David Roberts, being the owner of 400 acres of land, bordering on the Ohio River, conveyed to Simon B. Purdy 13 acres and 87 poles thereof, by a deed, dated January 7, 1843, and describing the same as follows:   " Beginning at

a double lynn on the river bank, thence S. 15 W. 40 poles to a beech immediately on top of the River Hill; thence S. 86 1-2 E. 58 1-2 poles to a stake in the line of a survey made for Abijah McLean; thence with said line N. 15 3-4 E. 36 poles to a stake, corner to said survey and standing on the river bank; thence down the river and binding thereon N. 83 1-2 W. 57 1-2 poles to the beginning.'' The small rhomboidal lot so conveyed lies in the northeastern corner of the 400 acre tract, and the lines run almost south, west, north and east. As the lines of opposite sides are not quite equal in length, it is somewhat irregular in form, but the differences are so slight that it may be regarded as regular. Its form and situation make the residue of the tract lie south and west of it. This circumstance weighs heavily in the determination of the construction of the following clause of the deed to Purdy, making a further grant: ''and also the privilege, should the said Purdy, his heirs or assigns, open a coal mine on said tract of land of undermining southward beyond the lines of said tract of sd. land so far as not to injure the tract of land of which this was a part, and now taken from.'' It is on this clause that Higgins, the present owner of said small tract of land, founds his claim of title to the coal in the western part of the residue of the large tract, now claimed by the Round Bottom Coal & Coke Company, a corporation.

As bearing on the interpretation of this clause, under the rule of practical construction and also on the defences of loss of title, by *laches* and non-user, if any was passed by it, the parties have deemed it important to set forth the subsequent mutations of title of the several portions of the original tract. By a deed, dated September 24, 1845, Roberts and wife conveyed 228 1-2 acres of the residue to Elisha Lindsey. By a deed, dated May 4, 1855, Purdy conveyed the tract containing 13 acres and 87 poles to John C. Snyder, ''with the privilege of mining for coal as expressed in the deed from David Roberts and wife to said Purdy,'' Snyder and wife having on the same day conveyed it to E. H. Caldwell, in trust to secure to Purdy payment of a certain sum of money, and afterwards made default, for which the trustee sold the property to Purdy,

and the same, together with the mining privilege, was conveyed back to him by Caldwell, by a deed, dated November 30, 1857. Purdy and wife conveyed it, with the mining privilege, to John M. Bell, by deed, dated June 12, 1865, who, on the same day, conveyed it to John H. Smith, who, on the 16th day of March, 1868, conveyed it to Elisha Lindsey, the owner of the adjoining 228 1-2 acre portion of the 400 acre tract, the conveyance of which has already been mentioned. By virtue of a judicial sale, made in July 1881, confirmed in October of that year, both tracts were conveyed by Jacob B. Hicks, sheriff and special commissioner, to Wm. H. Lindsey, who conveyed them to John Higgins plaintiff in this bill, by a deed, dated March 3, 1897. Both of these deeds conveyed in express terms the mining privilege, or coal in the remainder of the 400 acre tract. Meanwhile, David Roberts, by a will dated July 6, 1874, to which he appended a codicil, dated February 18, 1879, and which was probated August 16, 1879, devised the residue of the tract to his daughter Olevia A. Stockett. Afterwards, October 17, 1891, Blanch M. Potts became the owner of this land in severalty, by a decree of partition, and later the coal under it was conveyed to the Round Bottom Coal and Coke Co.

Alleging intention on the part of said mining company to take and carry away the coal in question, under claim of title thereto, the plaintiff prayed an injunction, inhibiting and restraining it from so doing.

As bearing on the question of the intention of the parties to the deed conveying the 13 acres and 87 poles tract, together with the right to undermine the adjacent lands southward, the bill avers substantially that the land granted was practically worthless for agricultural or any other purpose, except that a small portion thereof bordering on a creek emptying into the Ohio River, was suitable for the erection of buildings, tipples and other appliances necessary to the operation of a coal mine, and that, at the date of the deed, the only means of transporting coal from that neighborhood to distant markets was the Ohio River; and that, just back of the river hill on which the granted land lies for the most part, the land is suitable for agricultural purposes. The bill further shows that extensions of the northern

and eastern lines of the small tract would include between them practically all the residue of the tract, lying south, southwest and west of the small parcel. All of the land, the coal under which is in question, lies nearly west of the small tract granted out of the northeastern corner of the original tract, but practically all of it would lie within the extended northern and eastern lines.

If the clause, "should the said Purdy, his heirs or assigns, open a coal mine on said tract of land," states a condition precedent to the vesting of title to the coal in the adjoining lands, assuming, for the present, that the grant of the privilege of undermining amounts in law to a grant of the coal in place, the grant would no doubt fall within the rule against perpetuities; for, as no time is fixed, the coal mine might be opened in the remote future, a hundred or five hundred years hence, and so beyond the period of a life or lives in being, ten months and twenty-one years. *Starcher* v. *Duty*, 56 S. E. 524; *London &c. Ry. Co.* v. *Gomm*, 20 Chy. Div. 582. If, however, the clause, which, it is said, effected a grant of the coal in place, is susceptible of any construction which will pass title to something, either the coal, or a right to mine coal, the court is bound to give such construction, to the end that the intention of the parties may be effected and that the clause may not be invalid, agreeably to the maxim and rule of construction, *ut res magis valeat quam pereat*, meaning that the thing, the deed, shall avail rather than perish. *Barbour, Stedman & Herod* v. *Tomkins*, 58 W. Va. 572, 590. "An instrument intended to operate as a deed should so operate, if not legally impossible for it to do so." 13 Cyc. 604. This is a principle applicable to the construction of all instruments and especially statutes, which are always so construed, if possible as to avoid conflict with the constitution. "Where the language of an instrument is susceptible of two constructions, one of which will render it valid and the other invalid, the former will be adopted. Likewise an instrument will be construed, if possible, as being made for a legal purpose rather than for an illegal purpose." 17 Am. & Eng. Ency. Law 17, 18. This text is well sustained by numerous decisions cited for its support. "When a contract is open to two

constructions, the one lawful and the other unlawful, the
former must be adopted." *Hobbs* v. *McClain*, 117 U. S.
567. *United States* v. *C. P. R. R. Co.*, 118 U. S. 235. We
think the clause in question is susceptible of a construc-
tion which will make it valid. It does not necessarily mean
that no right should pass, except on condition that a mine
shall be opened on the small tract granted. In view of the
phrase, "so far as not to injure the tract of land of
which this was a part," it may be reasonably and consist-
ently said that the clause, "should the said Purdy, his
heirs or assigns, open a coal mine on said tract of land,"
was inserted for the purpose of restricting the opening of
mines, for the removal of the coal, to the tract of land
granted, the intention being to grant either the coal or an
incorporeal right to dig and carry away coal, but the re-
moval thereof to be effected not otherwise than through an
opening made on land granted. The terms of the deed, it
is to be observed, are informal and inartistic, importing
that less depends upon the forms of expression, in its
various parts, than the substance thereof and their relation
to one another. If the grantor had said " and also the priv-
ilege of undermining southward beyond the lines of said
tract of said land so far as not to injure the tract of land
of which this was a part, and from which it is now taken,
through and by means of a mine to be opened on the tract
of land hereby granted," a reasonable agreement would
have been disclosed. So expressed, the intention to grant
and pass a present interest or right, respecting the coal in
the adjacent land, would be obvious and indisputable, and
so we think the clause must be construed. Otherwise, that
portion of the deed would be invalid. The reports abound
with illustrations of this principle as applied to contracts.
In *Haigh* v. *Brooks*, 10 Adol. & El. 108, a guaranty said
"In consideration of your being in advance to Messrs. John
Lees and Sons, in the sum of 10,000*l.*, for the purchase of
cotton, I do hereby give you my guarantee for that amount
on their behalf." It was urged against the validity thereof,
that the advance mentioned appeared to have been already
made and afforded no consideration for the promise, but
Lord Denman said it should be read as if the guarantor had
said "In consideration of your becoming in advance" or

"on condition of your being in advance." In *Thrall* v. *Newall*, 19 Vt. 202, 47 Am. Dec. 682, a written assignment of a note placed the words "for value received" in a connection which made them appear to be descriptive of the note assigned rather than a recital of consideration for the assignment. The court said, in disposing of the question,, "Where the meaning of the language used is doubtful, or susceptible of two senses, that is to be adopted, which would give effect to the instrument as a legal contract, rather than that, which would render it inoperative."

Though the deed does not expressly say the grantee shall have the right or privilege to mine, dig and carry away coal from the adjacent land, the language obviously relates to coal and nothing else. Coal is the subject matter thereof, and the undermining contemplated could mean nothing other than the removal of the coal, The intention to grant a coal right or interest is so plainly indicated by the terms used, that the contrary cannot be supposed. The only limitations placed upon this right of undermining the adjacent land, by removing the coal therefrom, relate to the direction in which the mining shall be done and injury to the land. The limitation, concerning direction, is unimportant on the inquiry as to the nature of the right granted. That respecting injury to the tract of land cannot be taken in its literal sense, for the removal of any coal therefrom, even one ton, would work an injury to the land, viewed in the larger sense of the term, embracing everything from the surface to the center of the earth. Hence, land, as used in this clause, has a restricted meaning. As removal of coal from the tract, if done, to such extent and in such manner as not to injure or destroy the surface, was contemplated by the parties, the right to injure the land to that extent is one of the things expressly granted; and the limitation must therefore be confined to injury to the surface of the land and minerals, interests and elements thereof other than coal. Subject to this limitation, the right granted is full, complete and unconditional, and there is no reservation or stipulation in the deed, importing any intention contrary to the hypothesis of an absolute grant of the right to mine and take away all of

the coal in that portion of the land embraced within the very general and indefinite term relating to area, the word "southward." That it was the intention to grant something cannot be denied, and it remains only to be determined whether that was a mere right to go upon the land and dig and carry away coal, in common with the owner of the land, amounting to an incorporeal hereditament, or a grant of the coal in place. Having carefully examined the authorities bearing thereon, our conclusion is that the deed passes title to the coal. A very similar clause was construed in *List, Trustee* v. *Cotts, Trustee*, 4 W. Va. 543. That deed, after granting in fee a distinct parcel of a tract of land, said "Also the right of digging for coal under the adjoining land lying east of said lot," the lot conveyed in fee simple. The references to this right in the habendum and the covenant of warranty were not broader. Both clauses contained the phrase "with the right of digging for coal as aforesaid," no more and no less. Nowhere in the deed was it said that the right to dig should extend to all the coal or that the right granted should be exclusive. That there was no limitation in any form upon the granted right to dig for coal, made it exclusive and equivalent to an express and direct grant of the coal. In reaching this conclusion, the court followed the decision of the Pennsylvania court in *Caldwell* v. *Fulton*, 31 Pa. 475, in which all the English cases and a number of American decisions bearing on the question of construction had been carefully reviewed and analyzed. The doctrine of *Caldwell* v. *Fulton* has been adhered to by the Pennsylvania Court, and even extended, and the principles therein declared are recognized elsewhere as sound. To repeat the reasons and argument advanced, in support of the conclusion in that case and in our own case of *List* v. *Cotts*, would subserve no good purpose, and it is doubtful whether anything of value can be added. As tested by the principles and considerations upon which different conclusions have been arrived at in the construction of other deeds, relating to title to coal and mining privileges, no weakness or vulnerability has been found in them; nor can these cases be brought within the reasoning of such other cases. A later Pennsylvania case, *Gloninger* v. *Coal Co.*, 55 Pa. 9, may be regarded, on

hasty examination thereof, as being in conflict with that of *Caldwell* v. *Fulton*, but careful consideration of it results in the view that it is not. In consideration of $6.50, the grantor conveyed to the grantee, a blacksmith, his heirs, executor, administrators and assigns, forever, "the free right to dig coal at the coal bed under the foot of the mountain on my lot, with the privilege freely to carry the coal from the said lot, as also the free ingress and regress to and from said coal bed through my lands at all times hereafter." The court held this to be a grant of an incorporeal hereditament and perpetual right to dig and carry away coal in common with the grantor, and not an exclusive right in the grantee to take all the coal, to the exclusion of the grantor, equivalent to a grant of the coal itself. It is to be observed that the right was limited to the taking of coal from a certain designated coal bed, and was made to a blacksmith, for a small consideration, circumstances tending to show, in the opinion of the court, intention to give the right to obtain coal from the mine for blacksmithing purposes. A like conclusion was reached by this Court in *Chapman* v. *Coal Co.*, 54 W. Va. 193. The deed construed in that case excepted, in favor of the grantors, their heirs and assigns forever, "the use and occupancy of any one of the coal banks on said land" that they might at any time thereafter select. In reaching this conclusion, the court took into consideration the circumstances and conditions surrounding the parties at the time. On page 201, JUDGE MILLER, speaking for the Court, said: "We are further of the opinion that the exception of the deed, if good for any purpose, reserving only the right to take coal for the purpose for which it was then used in that section from any of the coal veins on the said conveyed tract of land, to be selected by the persons mentioned in the deed; and that the terms use and occupancy of any one of the coal banks on said land, must be restricted to the purpose of digging and removal of coal for the purposes aforesaid," namely, blacksmithing purposes, as will appear by reference to page 196. We have here no such index to the intention of the parties. The land lies in a region of country in which coal was then deemed a valuable commercial article, and, in which means of transportation were at

hand, and it does not appear that any mine or coal bank had then been opened on any portion of the land, from which coal had been used for any specific purpose which may have been within the contemplation of the parties, nor does the deed contain any term or expression, importing intention to give only the right to take coal from some coal bed, bank or mine, open and used at the time, or for any specific or limited purpose.

A clause in the will of David Roberts, devising to his daughter Olevia A. Stockett the residue of the 400 acre tract, as his hill farm, supposed to contain about 200 acres, for life, and directing it to be sold after her death, and further providing as follows: "and when sold one half of the coal under the land to be reserved to pay Elisha Lindsey for a claim he holds against the coal under the land for about that amount which must be attended to before the land is sold. The above order is cancelled by giving her the four one acre lots bought of A. D. Baker and the house," is relied upon by both parties as reflecting light on the intention of the grantor. The last clause of the above quotation is rendered intelligible by an explanation made by the bill, showing that, between the word "sold" and the words "and this," the following provision was originally written and then canceled by drawing a pen through it: "And also I order that James and Jonathan each of them to give Olevia $600.00 apiece and her mother give her $500.00 to build her a house." It is also claimed that by an agreement between David Roberts and one Isaac Hoge, made on the 9th day of June, 1866, in contemplation of a sale of the 200 acre residue, the former recognized the Purdy claim of title to the coal, by the insertion therein of the following clause: "And the party of the second part further agrees to release the party of the first part of the contract made between S. B. Purdy & said Roberts of mining for coal in Robert's land now owned by Elisha Lindsey for which Hoge agrees to release said Roberts. * * * Should no sale be made by the first day of April, 1867, then this agreement is to be void." Presumably no sale was made, as contemplated, and this agreement became, by its terms, ineffective and void, but remains as a circumstance, supposedly tending to sustain the

construction of the deed, asserted by the bill. It does not apppear that a sale was made, pursuant to the agreement.

The clauses of the will and agreement, relied upon, seem to operate both for and against the plaintiff, and not to be decisive of anything. They indicate knowledge on the part of Roberts of the assertion of a claim of right under the Purdy deed, and recognition thereof by him, and the will seems to partially define that right as being, in his opinion, something other than title to the coal, but neither Purdy nor any one claiming under him was a party to the will. The agreement of June 9, 1866, defines it as a contract "of mining coal in Robert's land" but not otherwise. What connection Hoge had with it does not appear, but the agreement indicates that he proposed to sell the land as agent on a commission, and, hence, the interpretation put upon the Purdy deed by him, in his agreement with Roberts, does not in any way bind Purdy or Lindsey, or indicate what estate or right they thought they held under it. We do not see in these papers anything bearing materially on the interpretation of the clause in question, or tending to raise an estoppel on the part of the defendants by conduct of their predecessor in title.

Indefiniteness of the language of the clause, concerning the area or portion of the adjacent land, covered by the grant of the coal, has occasioned much argument and contention. The land in question lies more nearly west than south of the 13 acre tract. The northern end of it lies almost directly west, while the central and southern portions lie southwest. The southeastern corner would be slightly cut by a line running on bearing S. 60° W. from the northwest corner of the 13 acre tract. The northern line of said tract extended would cut off a portion of the northern part. To limit the conveyance to land directly south of the 13 acre tract, would give the coal in only a very small portion of the original tract, and none of that part now claimed by the defendant, the Round Bottom Coal and Coke Company. The clause under consideration gives the right to undermine "southward beyond the lines of said tract." The use of the word "lines" instead of "line," in connection with the general and indefinite term "south-

ward,'' and the fact that the residue of the land lay south and west of two lines of the granted tract, clearly indicate intention not to limit the grant to land immediately and directly south of the granted tract. The term '' southward'' must be considered with reference to the subject matter, the residue of land. Very little of it lay directly south, and a large portion of it, the great bulk of it, lay in a south-westerly direction. Some did lie south and some west, but more southwest. If the grant had said south of the ''line,'' the intention to grant only coal lying immediately south would have been reasonably clear; but the use of the term '' lines'' strongly imports intention to make a larger grant. The grantor owned land beyond only two lines of the 13 acre grant, the southern line and the western line. As the clause is informal and inartistic and mentions land beyond the lines of the tract granted, this term '' lines'' must be given effect in determining what was meant or intended by the general term '' southward'' and the two words taken together, and read in the light of the subject matter, can mean nothing other than a grant of coal lying southwestward, as well as southward, from the tract granted. In *List* v. *Cotts*, the adjacent land did not lie directly east of the granted tract. On the contrary, it lay southeast thereof, as will appear from the courses of the deed construed in that case. The tract was irregular and rhomboidal in form, the lines running S. 44; W S. 28 E; N. 44 E; and N. 28 E., from which it appears that, strictly speaking, the adjacent land in respect to which coal was granted, must have been northeast or southeast. In fact, it was southeast.

As the defense of non-user rests upon the view that the right granted was a mere easement, the construction we have given the clause under consideration, eliminates it. Such defense cannot be set up against title to corporeal property. Nor does the statute of limitations apply. Possession of the land by the grantor of the coal is not deemed in law adverse possession of the coal, no mine having been opened by him, nor any other act done indicating actual possession of the coal as a separate entity. *Wallace* v. *Elm Grove Coal Co.*, 58 W. Va. 449.

What is here said is predicated on the allegations of the bill. The answer and evidence adduced hereafter, if any, may wholly alter the case.

Having concluded that the deed, construed in the light of the fact and circumstances, disclosed by the bill, carries title to the coal in the tract of land in question, it follows that the court erred in sustaining the demurrers to the bill and amended bill, and dismissing the same. Hence, the decree complained of will be reversed and the cause remanded.

*Reversed.    Remanded.*