## CHARLESTON.

GIBNEY *et al. v.* FITZSIMMONS *et al.*

Submitted June 3, 1898—Decided November 26, 1898.

1. DEED—*Construction—Intent of Parties.*

The legitimate purpose of all construction of instruments in writing is to ascertain the intention of the party or parties making the same, and, when this is determined, effect will be given thereto, unless to do so will violate some established rule of property. (p. 342).

2. DEED—*Description—Intent of Parties.*

Where the description consists of several parts, and some of them are incorrect, if it can be ascertained from those which are correct what was intended to be conveyed, the incorrect parts will be rejected, and the instrument be made to take effect. (p. 342).

3. DEED—*Ambiguity—Intent of Parties—Subsequent Acts.*

If the language of a deed is ambiguous, the court, in order to arrive at the intention of the parties, may look at their subsequent acts, and the manner in which the thing granted has been used and enjoyed under the grant. (p. 343).

Appeal from Circuit Court, Ohio County.

Bill by Eda Gibney and others against James Fitzsimmons and others. Decree for complainants. Defendants appeal.

*Affirmed.*

WHITE & ALLEN, for appellants.

HOWARD & HANDLAN and T. S. RILEY, for appellees.

McWHORTER, JUDGE:

James Fitzsimmons and Mary Gibney purchased to-

gether a piece of real estate in the city of Wheeling, under the following contract: "Wheeling, July 18, 1864. Mr. Fitzsimmons and Mrs. Mary Gibney have this day purchased from Mrs. Mary Anne Fitzpatrick Powell the house and lot northeast corner of Zane and Seventh streets, for the sum of six hundred dollars, and on the following conditions, to which all parties subscribe: Two hundred dollars to be paid forthwith, and the balance in annual sums of two hundred dollars, with interest at six per cent.; the deed to be transmitted to the purchasers after they shall have paid in full. Hiram D. Powell, Mary A. Powell." The premises so purchased consisted of a a lot designated as "lot 157," fronting sixty feet on Zane street, and 50 feet on Seventh street. Upon the corner fronting Zane street was a double frame house, thirty feet wide. At the time of the purchase, Mrs. Mary Gibney was occupying the west or corner half of the house as a residence, and continued to so occupy it until 1874; and, when she left it, she kept tenants in it, and collected the rents, until her death, in 1892; and, soon after the purchase, Fitzsimmons, with his family, moved into and occupied the east half of the house, and so continued to occupy it until about the year 1874, when he built a brick house on the east half of the lot, and moved into that, where he has remained ever since, and has continued to occupy the east half of the said frame house by tenant, collecting the rents, ever since. On the 17th day of August, 1866, the grantors, Hiram D. Powell and Mary A. Powell, undertook to convey to said Mary Gibney and James Fitzsimmons, by two separate deeds, their respective portions of said property, which deeds both bear date on said 17th of August, 1866, and were duly acknowledged and recorded on the 22d day of the same month. One of said deeds conveyed to Mary Gibney, in trust for her son John A. Gibney, "that part of lot No. (157) one hundred and fifty-seven now occupied by the said Mary Gibney, party of the second part, and fronting on Zane street thirty feet, commencing at James Fitzsimmons' line, and running thence westward to Seventh street, and running from Zane street to Arthur McGinness' line a distance of fifty (50) feet, together with the tenement house situated

thereon." The other conveyed to James Fitzsimmons, in trust for his wife, Mary Fitzsimmons, "that part of lot No. one hundred and fifty seven (157) now occupied by the said James Fitzsimmons, party of the second part, and fronting on Zane street thirty (30) feet, commencing at Mary Gibney's line, and running thence eastward, and running from Zane street to Arthur McGinness' line, a distance of fifty (50) feet, together with one.half of tenement house situated thereon."

John A. Gibney died in the summer of 1891, and Mary Gibney in October, 1892. Eda Gibney, widow, and Margaret A. Gibney, and other heirs at law of John A. Gibney, deceased, filed their bill at March rules, 1894, in the circuit court of Ohio County, against James Fitzsimmons and Mary Fitzsimmons, his wife, praying that the court appoint a discreet person as trustee in the room and place of said Mary Gibney, deceased, under said trust deed, and that said trustee, when so appointed, be directed to convey the property to plaintiffs, and that defendant James Fitzsimmons be held to account for the rents collected by him for the property since the death of said Mary Gibney, and that he be directed to interfere no further with the rights and interests of plaintiffs in the property, and that he be required to turn over the possession of said property to said trustee. And at March rules, 1895, said plaintiffs filed their amended bill, besides the said James and Mary Fitzsimmons making all the heirs at law of Mary Gibney parties defendants, containing about the same prayer as the original bill, and that the rights and interests of the plaintiffs in the premises, and of the said trustee who might be so appointed, might be clearly fixed and defined by the court, so that the said James Fitzsimmons might be deterred and stopped from further interference with them or the property, and for general relief. James and Mary Fitzsimmons, Bridget Lantry and her husband, Catherine Gribben and her husband, the adult defendants, filed their joint answer, denying the material allegations of the bill; that Mary Gibney, either in her own right or as trustee of John A. Gibney, ever owned or occupied or claimed the whole of the property, or until the filing of the bill had they, or any one

claiming under them, claimed or pretended to claim more than the part of lot 157 upon which the west half of the double house is situated, and extending back the width of the west half of the double frame house from Zane to Seventh street, along the east line of Seventh or Wood street, fifty feet to the McGinness property; and averring that, at the time of the purchase, each took possession, Mary Gibney on the west, and Fitzsimmons on the east, of said line; that the west fifteen feet, on the corner, of which Mary Gibney took possession, was more valuable than the east forty-five feet of said lot, of which the said Fitzsimmons took possession; that, during all the time from the purchase, all the parties, as well as Mary Gibney and John A. Gibney, well knew and understood the line to be as described, and that the Fitzsimmonses occupied the said east forty-five feet by right of their ownership thereof, and not, as alleged in the amended bill, with the assent and permission of said John A. Gibney or any other person, and that respondents, had no knowledge of plaintiffs' claim until the filing of the bill; that from the time of the purchase, in 1864, until the present, the said James and Mary Fitzsimmons had had the open, notorious, continuous, uninterrupted, and undisputed possession of said property to said line, and paid the taxes thereon; that they not only claimed it under their deed but their claim and right thereto was never disputed by said Mary Gibney or John A. Gibney, or any one claiming under them. Respondents aver that in the deeds from Powell and wife, of August 17, 1866, there is a material mistake in the description of the property in the deed to James Fitzsimmons, in that the distance call on Zane street is thirty feet, while it should be a much greater distance; that the mistake is shown on the face of the deed, as the deed calls for the property "now occupied by the said James Fitzsimmons," and, in further describing the property, says, "together with one-half of tenement house situated thereon," clearly showing that the one-half of the tenement house occupied by said Fitzsimmons was and still is on the part of said lot No. 157 conveyed to said James Fitzsimmons; that a like mistake appears in the deed under which the plaintiffs' claim; that said deed conveys such part of lot No. 157 as was occupied by

Mary Gibney at the time said deed was made, and conveys therewith a frame tenement house situated thereon, and calls for the line of said James Fitzsimmons, showing that it was the intention, both implied and express, in said deed, that the line between the double frame houses extended was the dividing line between the said properties, and that the use of the words "thirty feet" in said deed was a mistake and error therein, which should be reformed and corrected.

Respondents deny that the property was conveyed in trust to the said Mary Gibney for her son John A. Gibney, and aver that it was purchased and improved by said Mary with her own money, and that she used, occupied, and rented it, and received the rents and profits therefrom from the time of the purchase, in 1864, until the time of her death, in 1892; that said John A. Gibney never invested a dollar in the property, or had anything to do with it, and made no claim during his life or the life of said Mary that said property was held in trust for him, and that respondents never heard of such claim until about the time of the bringing of this suit; that the deed to said Mary is in the handwriting of said John A. Gibney, and that both grantors and grantee Mary Gibney were uneducated, and could not read writing; "that said Mary Gibney did not know during her lifetime that the words 'in trust for John A. Gibney' were in said deed; that no effort was made by the said John A. Gibney during his lifetime to enforce or even claim any interest in said property, and that said words were inserted in said deed either by accident or mistake, or in fraud of the right of the said Mary Gibney." Respondents aver that said property was owned in fee by said Mary Gibney, and at her death descended to her heirs at law, as follows: One-fifth to the plaintiffs, one-fifth to respondent Mary Fitzsimmons, one-fifth to Bridget Lantry, one-fifth to Catherine Gribben, and one-fifth to the husband and children of Rose (Gibney) Oshe, deceased; and that said property should be partitioned and divided among said heirs at law; and they pray for affirmative relief,—that said line may be fixed and established along the line between said double frame house extended to the northern boundary of the lot; that the deed to Mary Gibney be construed in the light of

these facts and the evidence offered, and be held to be a deed in fee, and that the said Mary Gibney held the property.in fee under said conveyance; and that same be partitioned and divided among said heirs at law, or sold, and the proceeds divided.   Plaintiffs filed their special replication, traversing the material averments of the answer. The answer of the infant defendants was filed by their guardian *ad litem.*

Depositions were taken and filed in the cause. On the 5th of June, 1896, the cause was heard, when the court ascertained "that Mary Gibney and James Fitzsimmons, on July 18, 1864, purchased a part of lot 157, on the northeast corner of Zane and Seventh streets, consisting of 60 feet frontage on Zane street, and extending back along Seventh street, 50 feet, upon which was situated a double frame house; that under said purchase Mary Gibney took possession of the west half of said double frame house and the ground belonging thereto, fronting 15 feet on Zane street, and extending back the same width 50 feet along Seventh street, and that James Fitzsimmons took possession of the east half of said double frame house, and the balance of the ground fronting 45 feet on Zane street, and extending back 50 feet to the McGinness line, and that such possessions have ever since been undisturbed and continuous; that on the 17th of August, 1866, Hiram D. Powell and wife conveyed to each of them the respective parts so occupied by deeds, which are filed in this cause as Exhibit A of Eda Gibney's deposition, and Exhibit A of answer of James Fitzsimmons and others, and that the clause in each of said deeds, 'fronting on Zane street thirty feet,' when construed with the balance of the respective deeds, and the surrounding circumstances at the time of the execution of the same, and the acts of the parties under said deeds, should be made to conform to such occupancy; that the description of the property in the said deed to Mary Gibney is as follows:    That part of lot No. (157) one hundred and fifty-seven now occupied by the said Mary Gibney, party of the second part, and fronting on Zane street thirty feet, commencing at James Fitzsimmons' line, and running thence westward to Seventh street, and running from Zane street to Arthur McGinness' line, a distance of fifty

feet, together with the tenement house situated thereon, it being part of the lot or parcel of ground conveyed to Dennie Fitzpatrick by Jno. Ritchie, Craig Ritchie, Ellen Ritchie, and Mary Anne C. Ritchie, by deed bearing date the 1st day of April, eighteen hundred and thirty-seven.' It is therefore adjudged, ordered, and decreed by the court that the said deed of Hiram D. Powell and wife to the said Mary Gibney be reformed and corrected so that the description therein of the property thereby conveyed will read as follows: 'That part of lot (157) one hundred and fifty-seven now occupied by the said Mary Gibney, party of the second part, and fronting on Zane street fifteen feet, commencing at James Fitzsimmons' line, and running thence westward to Seventh street to Arthur McGinness' line, a distance of fifty feet, together with the tenement house situated thereon; it being part of the lot or parcel of ground conveyed to Dennie Fitzpatrick by Jno. Ritchie, Craig Ritchie, Ellen Ritchie, and Mary Anne C. Ritchie, by deed bearing date the first day of April (37,18) one thousand eight hundred and thirty-seven.' And the court is further of the opinion that the said Mary Gibney died seised and possessed of the fee-simple estate in and to the above-described parcel of land, notwithstanding the provision 'in trust for her son John A. Gibney,' contained in said deed, and that the same, upon her death, descended to her heirs at law. It is therefore further adjudged, ordered, and decreed by the court that the relief prayed for by the plaintiffs cannot be granted, viz. 'that a trustee be appointed in the room and instead of the said Mary Gibney as trustee in and under said deed, and that said trustee so appointed may be directed to convey the said property to the plaintiffs by deed.' And the plaintiffs not asking or desiring a decree against the defendant James Fitzsimmons for an account for rents, issues, and profits received by him from or on account of the said part of lot No. 157 fronting on what was formerly Zane, now Seventeenth street, fifteen feet, and running from Seventeenth street to what was formerly Arthur McGinness' line, a distance of fifty feet, and the tenement house situated thereon, the prayer of the bill for an account is therefore refused, but without prejudice to the rights of the plaintiffs to insti-

tute any proper action, suit, or proceeding for an account; and, none of the defendants asking any further decree, it is therefore adjudged, ordered, and decreed by the court that the defendants recover from the plaintiffs their costs by them about their defense expended."

From this decree the appellants obtained an appeal to this Court, and assign the following errors: "(1) That the court erred in changing the description of the property different from and inconsistent with the intention of the parties, expressed in the deed which has been regularly executed to Mrs. Mary Gibney.· (2) That the court erred in making a deed by its decree. (3) That the court erred in wiping out by its said decree the trust contained in the said deed to Mary Gibney. (4) That the court erred in its opinion, as expressed in the said decree, that Mary Gibney died seised and possessed in fee simple in and to the land conveyed by said deed, 'notwithstanding the provision in trust for her son John A. Gibney,' contained in said deed. (5) That the court erred in deciding that the said property, upon the death of the said Mary Gibney, descended to her heirs at law; that the court erred in giving to the defendants Fitzsimmons, by its said decree, forty-five by fifty feet of the said land conveyed by the two deeds exhibited with the pleadings in this suit, and the east fifteen feet of the house which was upon the land when it was purchased. (6) That the court erred in deciding that said Mary Gibney, was only entitled to fifteen by fifty feet of the ground, and the west fifteen feet of the house. (7) That the court erred in not appointing a trustee under the said deed in the room of the said Mary Gibney, as prayed for in the bill. (8) That the court erred in decreeing that any other than the plaintiffs in the cause were entitled to any interest in the part of the said land and the house which was conveyed to Mary Gibney."

The circuit court properly took the view that its business was in this cause to construe the two deeds dated August 17, 1866, made by H. Powell and wife to Mary Gibney and James Fitzsimmons, respectively. 1 Warv. Vend. c. 13, § 1, says: "It is a fundamental rule in the construction of deeds that effect must be given to the intent of the parties when it is plainly and clearly expressed, or can be

collected or ascertained from the instrument, and is not repugnant to any rule or law." In *Hurst* v. *Hurst*, 7 W. Va., 289, 299, JUDGE HAYMOND says: "When the language used is susceptible of more than one interpretation, it has been held that courts will look at the surrounding circumstances existing when the contract was entered into, the situation of the parties, and the subject-matter of the instrument; and sometimes, when the words are ambiguous, the court will call in aid the acts done under it, as a clew to the intention of the parties." *Caperton's Adm'rs* v. *Caperton's Heirs*, 36 W. Va., 479, (15 S. E. 257), (Syl. point 3). Also in *French* v. *Carhart*, 1 N. Y., 96, it is held that, "if the language of a deed is ambiguous, the court, in order to arrive at the intention of the parties, may look at their subsequent acts, and the manner in which the thing granted has been used and enjoyed under the grant." *Kinney* v. *Hooker*, 65 Vt., 333, (26 Atl. 690): "If a grant is ambiguous, the circumstances surrounding it and the situation of the parties are to be considered in construing it." In *Lehndorf* v. *Cope*, 122 Ill., 317, (Syl. point 2), (13 N. E. 505): "The legitimate purpose of all construction of instruments in writing is to ascertain the intention of the party or parties making the same, and, when this is determined, effect will be given thereto acordingly, unless to do so will violate some established rule of property." "In cases where the language used by the parties to an instrument is indefinite or ambiguous, and hence of doubtful construction, the practical interpretation put upon it by the parties themselves, as shown by their acts and conduct, is entitled to great, if not controlling, weight." 11 Am. & Eng. Enc. Law, 518; *District of Columbia* v. *Gallaher*, 124 U. S., 505, (8 Sup. Ct. 585); *Topliff* v. *Topliff*, 122 U. S., 121, (7 Sup. Ct. 1057); *Railroad Co.* v. *Trimble*, 10 Wall., 367; *Knick* v. *Knick*, 75 Va., 12. In *Johnson* v. *Simpson*, 36 N. H., 91, at page 94, it is said: "Where the description consists of several parts, and some of them are incorrect, if it can be ascertained from those which are correct what was intended to be conveyed, the incorrect parts will be rejected, and the instrument be made to take effect." And *Adams* v. *Alkire*, 20 W. Va., 480: "Where two clauses are irreconcilably repugnant, in

a deed the first, and in a will the last, prevails." 2 Minor, Inst. (4th Ed.) 1059; *Blair* v. *Muse*, 83 Va., 238,(2 S. E. 31.)

The first part of the granting clause in each deed, descriptive of the property granted, is to Mary Gibney "that part of lot No. 157 now occupied by the said Mary Gibney," and to James Fitzsimmons "that part of lot No. 157 now occupied by the said James Fitzsimmons." The first is further described as "fronting thirty feet on Zane street, commencing at James Fitzsimmons' line and running thence westward to Seventh street, and running from Zane street to Arthur McGinness' line a distance of fifty feet, together with the tenement house situated thereon;" the second further decribed as "fronting thirty feet on Zane street, commencing at Mary Gibney's line, and running thence eastward, and running from Zane street to Arthur McGinness' line a distance of fifty feet, together with one-half of tenement house situated thereon." The tenement house is situated on the corner, and covers thirty feet front on Zane street, all of which house, according to the literal reading of the deed to Mrs. Gibney, is conveyed to her, and one-half of which, according to the other deed, is conveyed to Fitzsimmons. Both deeds are dated the same day, and both acknowledged and recorded on the same day; but another than the date. The evidence clearly shows that, at the time of making the deeds, Mary Gibney was in possession of, and occupied, fifteen feet fronting on Zane street, and running back with Seventh street the same width with the center of the double house, and that James Fitzsimmons was in possession of, and occupied, the residue of the lot fronting forty-five feet on Zane street, and running back, the western line, with the middle of the said double frame house fifty feet, to the McGinness property.

After thoroughly reviewing the evidence, I have adopted the following views of Judge Paull, of the circuit court, expressed in his decision of the case:

"Now, the evidence in this case shows that lot No. 157, which is situated at the northeast corner of Zane and Seventh streets, in the City of Wheeling, and has a frontage of sixty feet on the former, and fifty on the latter, street, was purchased by Mary Gibney and James Fitz-

simmons, jointly, from Hiram D. Powell and wife, on July 18, 1864, for.$600; that upon the payment of this sum in full, one-half thereof being paid by each purchaser, the deeds aforesaid were executed; that at this time the eastern thirty feet of the said lot was vacant, and consisted largely of an embankment six or seven feet high, but that on the western thirty feet thereof there was located a double frame dwelling house, the western half of which was occupied by Mary Gibney, and the eastern half, including the eastern thirty feet of the lot, by James Fitzsimmons; that the property continued to be so occupied until about 1874, when the latter, having graded the eastern thirty feet of the said lot, and built a two-story brick dwelling thereon, moved into the same, where he has since resided, and the former moved to Zanesville, Ohio, where she resided until 1889, when she returned, and made her home with the said James, who was her son-in-law, until her death, which occured in 1892; that the said James, from the time he moved out of the eastern half of the double frame house, in 1874, until the present, has continuously rented the same, collected and appropriated to his own use the rents, kept the building in repair, and paid the taxes assessed thereon; and that his right so to do was not questioned by anyone until a short time before the bringing of this suit. The evidence also shows that, at the time when the deeds aforesaid were executed, the western fifteen feet of the lot were worth more than the eastern forty-five feet, that, about the same time, the joint purchasers of the lot expended jointly the sum of six hundred and sixty dollars in repairing and improving the double frame house aforesaid; that the deeds were written by John A. Gibney, son of Mary Gibney, who was then a school boy, nineteen years of age; and that neither Mary Gibney nor James Fitzsimmons can or could read writing.

"The facts above detailed clearly warrant the conclusion, it seems to me, that the parties to the deeds under consideration intended thereby to convey to Mary Gibney and James Fitzsimmons the particular parts of lot No. 157 that they were occupying, respectively, at the time when the deeds were executed; that is to say, to the former the western fifteen feet and to the latter the eastern

forty-five feet thereof.   And this intention can be effect-
uated   without   violating   any   rule   of   law,   as   will   be
seen from an examination of  the  authorities  before  cited,
by  rejecting  all  of  the  descriptive  clauses  contained  in
each deed, except the first, which designates the  property
conveyed as that 'now occupied' by the grantee.   The deed
to Mary Gibney for her interest in this property purports
to convey the same to her 'in trust for her son John A.
Gibney.'   The evidence, however, shows that John A. Gib-
ney never invested one dollar in  the  property;  that  Mary
never knew until some ten years or more before the bring-
ing of this suit that the deed had been made in  that  form;
that she then repudiated the trust, and so notified her  son
John; that, from the date of the execution of the deed until
her death, Mary Gibney was in possession of the property,
either in person or by  tenants,  as  owner,  improving  and
taking to her own use the  rents  and  profits  thereof,  and
otherwise  exercising   over  it  such  acts  of  ownership  as
manifested unequivocally an intention to ignore and  repu-
diate any rights that John or any  one  else  might  claim
therein.   Under these circumstances, it must also be  held
that Mary Gibney's possession of this property was  from
its commencement, under the  deed  aforesaid,  adverse  to
the rights of John Gibney.   *Cooey* v. *Porter,* 22  W.  Va.,
121, 127, 128; *Jones* v. *Lemon,* 26  W.  Va.,  629;  *Stillwell* v.
*Leavy,* 84 Ky., 379, (1 S. W. 590)."

It is insisted by appellants that,  by  a  fair  construction
of the deed to Fitzsimmons, no part of the tenement house
is conveyed to him; that the words "together with one-half
of  tenement  house  situated  thereon,"  are  parenthetical,
and simply descriptive of what Fitzsimmons was occupy-
ing; and that, considering  the  two  deeds  together,  there
could not possibly be a more reasonable construction  put
upon it than that meaning.   It is impossible, it  seems  to
to me, for an unbiased  mind  to  read  the  deed  to  Fitzsm-
mons and come to the conclusion that it was  not  intended
to include in the grant the one-half of the tenement house.
The grant is of "the following described  property:    *  *  *
That part of lot 157 now occupied by the  said  James  Fitz-
simmons, party of the second part,  and fronting on Zane
street thirty feet, commencing at Mary Gibney's line, and

running thence eastward, and running from Zane street to Arthur McGinness' line a distance of fifty feet, together with one-half of tenement house situated thereon." Appellants, for the purpose of their construction, take the words "together with one-half of tenement house situated thereon" from their setting, where they can only be construed to mean a part of the grant, and place them as follows: "That part of lot No. 157 which (together with one-half of tenement house situated on said lot) is now occupied by the said James Fitzsimmons," etc., and gravely ask a court of equity to so construe the deed; and this, in the face of abundant proof that at the time of the purchase, in 1864, the east thirty feet were hardly considered worth anything, and that the corner fifteen feet, with the half of the house occupied by Mary Gibney, were more valuable that the east forty-five feet, including the half of the house.

Appellants contend that the trust is express in favor of John A. Gibney, and "that there is no rule of law or equity that can destroy this express trust, and transfer the beneficial ownership from the son to the mother, and there is no statute of limitation that can aid the appellees," and cite *Lockhard* v. *Beckley*, 10 W. Va., 87, in support of the first proposition, and *Gapen* v. *Gapen*, 41 W. Va., 422, (23 S. E. 579), in support of the latter. In the last-mentioned case (point 3 of syllabus) it is held that "no statute of limitations runs against an express trust, nor does lapse of time avail, until the duties are ended or the trust disavowed." In the case at bar, when the fact first came to the notice of the trustee, she was very indignant, disavowed the trust in the most emphatic terms, and always claimed and enjoyed the property as her own as long as she lived, and, when not occupying it as a residence, collected and enjoyed the rents and profits.

For the reasons herein stated, I find no error in the decree of the circuit court, and it is affirmed.

*Affirmed.*