# CHARLESTON.

IRVIN *et als. v.* STOVER *et als.*

Decided April 26, 1910.

1. HUSBAND AND WIFE—*Deeds—Estate by Entries for Life—Con-
tingent Remainder.*

A deed to T. S. and M. J. S., his wife, contains the following
clause, viz: "to be held by them as a homestead for them-
selves, and after them to their heirs, One Hundred Acres of
land." HELD:

I. The husband and wife take an estate by entireties for life
only, with the right of survivorship.

II. Under the statute abolishing the rule in *Shelley's Case*
the heirs of the husband and the heirs of the wife, respectively,
take a contingent remainder.

III. Upon the death of either husband or wife, title to one
undivided moiety of the land vests immediately in his, or her,
heirs, as the case may be, subject to the life estate in the whole
of the surviving life tenant; and upon the death of the survivor,
title to the other moiety vests in his, or her, heirs.

67 W. Va.

2.  DEEDS—*Construction—Intention of Parties.*
    In construing deeds, as well as wills, the purpose is to ascertain the intention of the parties, and when the intention is thus ascertained it will be effectuated, unless it contravenes some principle of law.

3.  HUSBAND AND WIFE—*Deeds—Remainder to "Their Heirs"—Presumptions.*
    Where an estate in lands is granted to a husband and wife for life with remainder to "their heirs," the presumption of law is that the heirs of each, as a separate class, take a moiety of the remainder.

4.  DEEDS—*Construction—"Heirs."*
    The word "heirs," when used in an instrument of conveyance to designate the class of persons to whom an estate is conveyed, should be given its legal and technical meaning, unless there is some other language in the conveyance clearly showing that the word was intended to have a different meaning, or unless the circumstances of the case are inconsistent with such meaning.

5.  PARTITION—*Right to Remedy—Persons Seized in Common and Entitled to Possession.*
    When two or more persons are seized in common of the same tract of land and are entitled to the possession, they may have partition, regardless of their source of title.

6.  JUDGMENT—*Conclusiveness—Matters Concluded.*
    A decree entered in a suit brought by a creditor attacking a deed as fraudulent as to his debt, which sets aside the deed only as to his debt and directs a sale of the land, has no effect upon the title conveyed by the deed, when it appears that there was no sale under the decree, and that the suit was afterwards dismissed on motion of the attacking creditor.

7.  ESTOPPEL—*Deeds—After Acquired Title.*
    Where one, having only a life estate in lands, makes a deed purporting to grant it in fee, and convenants to warrant generally the title, and afterwards acquires title adverse to the title granted, such after-acquired title will pass by way of estoppel to his grantee or those claiming under him.

8.  HUSBAND AND WIFE—*Estate by Entireties for Life—Survivorship—Statutory Provisions.*
    Section 18, chapter 71, Code (1906), does not abolish the right of survivorship between husband and ·wife in a joint estate held by them for life only. Survivorship as to such an estate remains as at common law.

Appeal from Circuit Court, Raleigh · County.

Action by Penira Irvin and others against Burdine Stover and others.  Judgment for plaintiffs, and defendants appeal.

*Reversed and Remanded.*

*Watts, Davis & Davis* and *E. Connor Hall,* for appellant.

*File & File,* for appellees.

WILLIAMS, JUDGE:

This is an appeal from a decree of the circuit court of Raleigh county rendered on the 14th day of December, 1905, upon a bill for the partition of a tract of 100 acres of land. A short statement of the facts is necessary to a correct understanding of the questions of law presented.

On the 11th of February, 1867, Lewis Stover and wife granted to their son Tollison Stover and Martha Jane his wife 100 acres of land which is the same sought to be partitioned. This grant contains the following clause, viz: "The said parties of the first part doth grant, bargain, sell and convey unto the said Tollison Stover and Martha Jane his wife to be held by them as a homestead for themselves, and after them to their heirs, One Hundred Acres of land."

On the same day Lewis Stover made four several conveyances to four of his other children for other portions of his land, apparently thereby conveying all his land, about 614 acres, to his children.  At the date of these conveyances Lewis Stover was indebted to one R. P. Toney who brought a suit in chancery attacking these conveyances on the ground of fraud and such proceeding was had in that suit that on the 26th of April, 1870, a decree was rendered holding said deeds to be fraudulent as to the plaintiff and setting them aside "so far as may be necessary for the payment of his (R. P. Toney's) claims herein decreed and recognized."  The decree further provided for a sale of the land in the event the debt was not paid within thirty days from the date of the decree, and appointed John W. Mc-Creery and Isaac S. Samuels commissioners to make sale of the land, and authorized either one of them to act.  John W. Mc-Creery qualified as such commissioner by giving bond, but so far as appears from the record there was never any sale of the land under this decree, and on the 29th of July, 1870, an order

was entered dismissing said cause on the motion of the complainant.

Tollison Stover, his wife, and his father Lewis Stover and wife, by deed dated July 20, 1870, granted the aforesaid 100 acres of land to Burwell Stover, and covenanted to warrant generally the title. Shortly after the execution of this deed Burwell Stover entered into possession of the land and he, and those claiming under him, have been in possession ever since. Burwell Stover made a will devising the land in severalty to his two sons, Andrew and Burdine, and died in 1897. Andrew Stover, one of the devisees, died before his father, and left to survive him eight children, viz: Samuel, Sarah, Harvey, Martha, Josie, Laura, Princess and Eliza. Sarah died, after her father, without issue.

Martha Jane, wife of Tollison Stover, died July 28, 1878, leaving seven children, three of whom died shortly after their mother's death, unmarried and without issue. In the year 1879 Tollison Stover intermarried with one Deborah Kidd by whom he had six children, three of whom died before their father, unmarried and without issue. Tollison Stover died December 4, 1900, leaving to survive him four children by his wife Martha Jane, and two children by his wife Deborah, and one grandchild, Lessie Bailey, the child of a deceased daughter by the second wife. It is thus seen that Martha Jane Stover left seven children to survive her, and that Tollison Stover left six children and one grandchild to survive him, as their respective heirs at law, but that four of Tollison's children were by his first wife, and two and a grandchild by his second wife. The children of Tollison Stover, and his grandchild, are asking partition of the land against Burdine Stover and the heirs of Andrew Stover who claim the whole.

One question is, what affect had this decree upon the title which passed by the deed of Lewis Stover and wife to Tollison Stover and Martha Jane, his wife? We can not see that it had any. The decree did not set aside the deed in toto; the court could not thus avoid the deed. It was good between the parties, and void only so far as it stood in the way of Toney's collecting his debt. *Love* v. *Tinsley,* 32 W. Va. 25. The record shows that Toney's debt was paid by Burwell Stover. Toney testifies that Burwell Stover bought the land from the "old man Stover,"

who, we suppose, is Lewis Stover. He further states that Tollison and the old man "swapped land" in order that the old man might get the land in question to sell to pay the debt. It clearly appears that Burwell Stover took whatever title he got, directly from Lewis and Tollison Stover; he took none from the court. He apparently bought the land privately from the original owner, pending the suit, and paid off the debt sought to be enforced by the suit. Consequently, there being no assignment of the decree by Toney to Burwell Stover, the decree became inoperative for any purpose; it was satisfied, and the title remained where it was before the suit was brought. The suit was dismissed on Toney's motion in July, 1870, forty years ago. Lewis Stover, Tollison Stover and Burwell Stover are now all dead and nothing remains to explain what agreement, if any, they had concerning the payment of the debt, the record is all we have to enlighten us, and it is silent on the question of the value of the land. Toney's debt was only $113.39, and all of the conveyances which Lewis Stover had previously made to his five children severally, conveying away 614 acres of land, were likewise set aside by the same decree. May not all of these grantees have contributed to the payment of this debt in order to avoid a sale of their land? We do not know. Toney testified that Lewis Stover and Tollison Stover "swapped land" in order that Lewis might get this land to pay the debt. May not this arrangement have amounted to Tollison's paying the debt himself indirectly? We do not know, but if he did so pay the debt, or if it was paid in any other way than by taking the proceeds of the very land itself, there is clearly no equity that will defeat the title of those who took an estate in remainder, by purchase, under the Lewis Stover deed of February 11, 1867. Consequently, the suit of *Toney* v. *Lewis Stover and others,* having been dismissed before any sale of the land under the decree, it can have no effect upon the title to the land; it is as if the suit had never been brought.

In order to ascertain who is now entitled of the land, it is first necessary to construe the deed from Lewis Stover and wife to Tollison Stover and Martha Jane his wife, wherein the following language is used, viz: "to be held by them as a homestead for themselves, and after them to their heirs." Do not these words limit the estate to Tollison and Martha Jane for life

only? If these words are to have any meaning at all they clearly have this effect. Without these words the deed would have operated to carry a fee, under the statute providing that the greatest estate the grantor has shall pass, unless it appear that a less estate was intended to be conveyed. Section 8 chapter 71, Code 1906. We think these words operate to invest Tollison and Martha Jane Stover with a life estate by entireties. By the use of the word *homestead* it was not the intention of the grantor to create a technical homestead, but only to indicate the purpose for which the land was to be used; that is, as a place of abode; and by the words, "and after them to their heirs," he must have meant *after their death* to their heirs. In the case of *Arrants* v. *Chumley*, — Tenn. ——, (48 S. W. 342), the supreme court of Tennessee held that the use of the word *homestead* in a deed containing a similar clause to the one we are now considering operated to invest the grantee with a life estate only.

No particular words are necessary to create a life estate, any language in the conveyance which sufficiently shows the grantor's intention will suffice. It is a settled rule in construing deeds, as well as wills, that the language of the instrument will be given that construction which will clearly effectuate the intention of the parties, when such intention does not contravene some principle of law. *Perkins* v. *Dickinson,* 3 Grat. 335; *Allemong* v. *Gray's Admr.,* 92 Va. 216 (23 S. E. 298); *Temple's Admr.* v. *Wright,* 94 Va. 338; *King.* v. *Ry Co.,* 99 Va. 625; *Lindsey* v. *Eckels,* 99 Va. 668; *Gibney* v. *Fitzsimmons,* 45 W. Va. 334; *Uhl* v. *R. R. Co.,* 51 W. Va. 106; *Waldron* v. *Coal Co.,* 61 W. Va. 280.

The effect, therefore, of Lewis Stover's deed was to invest Tollison Stover and Martha Jane, his wife, with an estate by entireties for life, and to create a contingent remainder in fee in favor of their respective heirs. The word *heirs* as used in the deed must be taken to have its legal and technical meaning and to denote that class of persons on whom the law would cast the descent, if the person whose heirs they are should die seized with an inheritable estate, because there is nothing in the conveyance to indicate that the grantor meant to restrict its meaning. The authorities are practically uniform to the effect that, when the instrument of conveyance contains nothing

to indicate that the word *heirs* is used in a restricted sense, such for instance as to mean children, or heirs of the body, it must mean heirs in general. *Reid* v. *Stuart,* 13 W. Va. 338; *Milhollin* v. *Rice, Id.* 510; *Stuart* v. *Stuart,* 18 W. Va. 675. In the case last cited there was a devise to the heirs of a living person to take effect immediately, and it was there held that the word *heirs* meant heirs apparent, because to have given it any other construction the estate could not have vested immediately, and the testator's intention would have been defeated. Judge Green, in the opinion on pages 689-690, draws a clear distinction between the meaning of the word *heirs* when used to designate a class of persons who are to take a *present* estate while their ancestor is living, and the meaning to be given to the word *heirs* when used to describe a class of persons who are to take an estate on the happening of a future event. In *Hinton* v. *Milburn,* 23 W. Va. 166, the 4th point of the syllabus reads: "Technical words used must be construed to have their proper meaning, unless it appears from the will that the testator used them in a different sense." And in *Baer* v. *Forbes,* 48 W. Va. 208, the law is stated in the 2d point of the syllabus as follows: "The word 'heirs' is a legal term having a definite meaning, and expresses the relation of persons to a deceased ancestor, and not a living, according to the maxim *nemo est haeres viventis.*" In the case of *Tomlinson* v. *Nickell,* 24 W. Va. 148, testator used this language in his will: "If my son should die without having heirs he shall divide the land between his sisters' heirs as he may think proper." It was held in that case that by the word *heirs,* first used, the testator meant heirs of the son's body, and by the word *heirs,* as used the second time, although occuring in the same sentence, he used it in its technical sense. It was necessary to give the first word *heirs* its limited meaning in order to effectuate the intention of the testator, because the contingency upon the happening of which the sisters' heirs were to take could never happen if the word *heirs,* as first used, was not given such limited meaning. In that case it followed, as a matter of course, that those persons who, upon the sisters' death, would occupy the relation as her heirs would occupy such relation to the son also, wherefore he could not die without heirs, if at the time of his death there were living the heirs of a deceased

limited construction to be given the word as applied to the sister. But there was no reason whatever for requiring this sisters' heirs, and the court adhered to the established rule, and gave to it its technical meaning. This case is cited to show the tenacity with which the court adheres to the technical meaning of the word "heirs" when there is nothing in the instrument in which it is used to show that it was intended to have a different meaning. 15 Am. & E. E. L., 320. See also 7 Enc. Dig. Va. & W. Va., page 67, and the numerous cases there cited.

When did the title to the estate in remainder to the heirs of Tollison Stover and Martha Jane Stover vest? The remainder could not become a vested estate upon the execution of the deed, because "their heirs" describes a class of persons not ascertainable at that time, and a class that could not be ascertained until the ancestor's death, by virtue of the maxim, *nemo est haeres viventis.* This then, according to the text writers and decisions, created a contingent remainder in the heirs, contingent not because the happening of the event on which the future estate was to vest was uncertain, but because of the uncertainty of the class of persons to take. These were unknown and unascertainable until the death of the life tenants. 2 Minor's Inst. 339; 24 A. & E. E. L. 398; *Williamson* v. *Williamson,* 18 B. Mon. (Ky.) 329; *Johnson* v. *Jacob,* 11 Bush. (Ky.) 646; *Colby* v. *Duncan,* 139 Mass. 398; *Wallace* v. *Minor,* 86 Va. 550. Upon the death of Martha Jane Stover her heirs immediately came into being, and the title to one moiety of the estate in remainder immediately became vested in them. Their enjoyment of the possession, however, was deferred until the death of Tollison Stover, because the life estate to him and his wife was an estate by entireties, and, being a life estate only, it was subject to the *jus accrescendi.* Section 18 chapter 71, Code 1906, abolishing the common law right of survivorship, does not apply to a life estate by entireties; it applies only to estates of inheritance. 2 Min. 410; *Thornton* v. *Thornton,* 3 Rand. 179; *Norman's Exor.* v. *Cunningham,* 5 Grat. 64; *Mc-Neely* v. *Oil Co.,* 52 W. Va. 616. But the fact that the heirs of Martha Jane Stover were thus withheld from the enjoyment of the possession of their estate, between the time of their mother's death and the time of their father's death, did not

prevent the title from vesting in them immediately upon their mother's death; and, having once vested, it did not thereafter become divested by any operation of law. It is only necessary that the title vest in *right* during the continuance, or immediately upon the determination of the particular estate. 2 Minor 334. Upon the wife's death her heirs who, prior thereto, were unknown, immediately became entitled of a vested remainder which had to await the death of the surviving life tenant before they could have possession. But the title in remainder, being now a vested one, became, as to the heirs of Martha Jane Stover, an estate of inheritance, and passed by descent from the three children who died in Tollison Stover's life time to him as heir. 24 A. & E. E. L. 390; 2 Minor 362; section 5, chapter 71, Code 1906; *Faulkner* v. *Davis,* 18 Grat. 674; *Norman's Exor.* v. *Cunningham,* 5 Grat. 64.

The legal presumption is that, when a grant is made to two persons jointly, each is seized of an equal share, or interest, unless the contrary appear in the grant. *Jarrett* v. *Johnson,* 11 Grat. 327. So, in case of a grant to two persons for life with remainder to their heirs, unless the term "heirs" be given a restricted meaning, the presumption is that the heirs of each, as a class, take the same share or interest in the remainder that the ancestor had in the life estate. *Norman's Exor.* v. *Cunningham,* 5 Grat. 64. The right of survivorship in this case affects only the life estate of Tollison Stover and Martha Jane, his wife, and therefore does not change this rule as to the quantity of interest the heirs of each shall take in the remainder. Neither is it affected by the statute abolishing the rule in *Shelley's Case,* which determines the manner of the taking and the quality, or character, of the estate, but not the quantity of interest, which remains the same as it was at common law. The fact that a different class of persons may be heirs of the wife from those who may be heirs of the husband, and the presumption of law being that the heirs of the one are to have as much interest as those of the other, determines the question that the heirs of each take a moiety in the land, title to which vests first in the heirs of the ancestor first dying. *Norman's Exor.* v. *Cunningham,* 5 Grat. 64; *Williamson* v. *Williamson,* 18 B. Mon. (Ky.) 329.

Upon the death of Martha Jane Stover the remainder in

fee in one moiety of the land vested immediately in her seven children, who took, not by inheritance, but by purchase under the deed of Lewis Stover and wife of February 11, 1867. Three of these children died unmarried and without issue, during the lifetime of their father, whereupon the father, being their only heir at law, inherited from them three-sevenths of the one-half of the land. This three-sevenths of the one-half passed, by virtue of Tollison Stover's covenant of general warranty, to the devisees of Burwell Stover; Tollison Stover's deed operating to pass his title, when it came to him, by way of estoppel. *Summerfield* v. *White,* 54 W. Va. 311; *Clark* v. *Lambert,* 55 W. Va. 512. Upon the death of Tollison Stover, December 4, 1900, the other moiety in remainder vested in Tollison Stover's six children and his grandchild, then living, four of whom were by his first wife, and two children and a grandchild by his second. The four children of the first wife, being heirs to both their mother and their father, take the same interest in both moieties of the land. The living children and grandchild by the second wife, take an estate in one moiety only. The four children by the first wife, viz: Penira, who married Charles Irvin; Delilah, who married John Dunbar; Adeline, who married Samuel Williams; and Sarah Ola Stover, are therefore entitled each to an undivided one-seventh in the whole, or four-sevenths jointly, and the two children and the grandchild by the second wife, viz: Florence Smith, Clementine Stover and Lessie Bailey, the grandchild, are entitled each to an undivided one-seventh in the half, or jointly to three-fourteenths of the whole; and those claiming under Burwell Stover are entitled to the three undivided sevenths of the half, or three-fourteenths of the whole, which passed first to Tollison Stover by inheritance from the three deceased children of his first wife, and then, by operation of estoppel under his deed of general warranty, to Burwell Stover, or his devisees.

. On the 12th day of November, 1901, Penira Irvin and Charles Irvin her husband, Lillie Ann Dunbar and John Dunbar her husband and Sarah O. Stover and Adeline Stover, now Adeline Williams, united in a conveyance to Ashton File, granting to him "a one-fourth undivided interest" in the aforesaid 100 acres of land. At the date of this deed Penira Irvin, Lillie Ann Dunbar, Sarah O. Stover and Adeline Stover were seized

of a four-sevenths undivided interest, and deducting therefrom the one undivided fourth, leaves them seized of nine-twenty-eighths undivided interest.

The will of Burwell Stover, before mentioned, devised this 100 acres of land in two separate parcels, one parcel to his son Andrew Stover, and the other to his son Burdine Stover. Burdine is now living, but Andrew died in the lifetime of the testator, leaving eight children as his heirs at law, one of whom afterwards died without issue. The will of Burwell Stover was made on the assumption that he was seized of the entire tract of land in fee, which, as we have before seen, was not the case. But the covenant of general warranty by Tollison Stover to Burwell Stover purporting to grant him the whole of the land in fee, by deed of July 20, 1870, operating as a conveyance by way of estoppel, invested the devisees of Burwell Stover with title to the three-fourteenths which Tollison afterwards inherited from the three deceased children of Martha Jane Stover. Consequently, the heirs of Andrew Stover are entitled jointly to three undivided twenty-eighths in that portion of the land devised by Burwell Stover to his son Andrew, and Burdine Stover is entitled to three undivided twenty-eighths in that portion of the land devised to him. The two children and the grandchild of Tollison Stover by his last wife are each entitled to the undivided one-seventh of the half, or to a one-fourteenth of the whole, the grandchild taking the part its mother, if living, would have taken.

The interest of the several classes would be as follows: the children of Martha Jane Stover, nine-twenty-eighths; Ashton File, seven-twenty-eighths; the children and granchild of Tollison Stover by his last wife, six-twenty-eighths; Burdine Stover three-twenty-eighths; and the heirs of Andrew Stover, three-twenty-eighths.

Plaintiffs had formerly brought an action of ejectment to recover the land, and in May 1904 suffered a non-suit. A judgment of non-suit does not operate as a bar to any subsequent suit or proceeding for the same cause. 4 Minor 958; 2 Black on Judgments, section 699; *Henry* v. *R. R. Co.,* 40 W. Va. 234.

The deed of Tollison Stover and wife and Lewis Stover and wife of July 20, 1870, to Burwell Stover invested the grantee with the greatest estate which the grantors then had in the

land, 'which was an estate for the joint lives of Tollison Stover and Martha Jane Stover his wife. Consequently, no right of action for the land, or right to have it partitioned, accrued to the plaintiffs until December 4, 1900, the date of Tollison Stover's death, at which time they first had the right to share in the possession. The bill in this cause was filed at July Rules, 1904. Plaintiffs had ten years from the death of Tollison Stover within which to bring their suit. .

Those claiming by purchase, as heirs of Martha Jane Stover and of Tollison Stover, by virtue of the deed from Lewis Stover and wife to Tollison Stover and wife dated February 11, 1867, do not occupy the relation of such adverse and hostile claimants to those claiming under the devise from Burwell Stover, as will prevent a· decision of their rights in this proceeding, since it is seen that the title in fee to so much of the land as they now have comes directly from the same source as the title of the plaintiffs, to-wit, by virtue of the Lewis Stover deed of February 11, 1867. The title which Burdine Stover and the heirs of Andrew Stover now have in the land is identical to the title of these plaintiffs. It is the three-sevenths of the one-half, which was inherited by Tollison Stover from the three deceased children of Martha Jane Stover, deceased, and which passed by operation of estoppel from Tollison Stover to Burwell Stover's devisees. This is all the interest they have. It is true they claim title to the whole of the land, but their title papers do not support their claim; on the contrary, their title papers, upon proper construction of them, prove that they are tenants in common 'with plaintiffs, and are entitled to the three-sevenths of the half, or three-fourteenths of the whole of the land. It was necessary to determine what interest if any, those claiming under Burwell Stover had in the land, as an incident to the ascertainment of what share, or interest, each claimant should have in the allotment. The fact that defendants were in actual possession, claiming title to the whole, would not prevent plaintiffs from having partition, unless they were claiming under a source of title distinct from, and hostile to, the source of plaintiffs' title. Suppose plaintiffs had brought an action of ejectment against defendants, they could only have recovered an undivided interest in the land; it would still have been necessary to partition the land. It was, therefore, unnecessary to do this,

as plaintiffs in their bill admit that defendants have a joint interest with them in the land; and the quantity, or share, in that joint interest is properly determinable in a partition proceeding. Plaintiffs and defendants are tenants in common, and have right to partition. Section 1, chapter 79, Code 1906; *Cecil* v. *Clark,* 44 W. Va. 659; *Davis* v. *Settle,* 43 W. Va. 17; *Moore* v. *Harper,* 27 W. Va. 362; *Hudson* v. *Putney,* 14 W. Va. 561.

In view of the law as expressed in this opinion, it follows that there is error in the decree appealed from. Consequently, the decree of the circuit court of Raleigh county, rendered on the 14th day of December, 1905, will be reversed, and this cause remanded to said circuit court for further proceedings therein to be had according to the principles stated in the foregoing opinion, and further according to the rules and principles governing courts of equity.

*Reversed and Remanded.*