U. G. Weekley *v*. Harley E. Weekley *et al.*

(CC 671)

Submitted September 7, 1943.   Decided October 19, 1943.

*M. C. Archer* and *Geo. Poffenbarger,* for plaintiff in error.

*W. F. Boggess,* for defendants in error.

Fox, Judge:

This case comes to us from the Circuit Court of Jackson County, in which a bill of complaint in the nature of a bill of interpleader was filed, seeking the construction of a reservation "of gas, oil and mineral right, during his natural life", in a tract of sixty-two acres of land, conveyed by the plaintiff to the principal defendant. The demurrer to the bill was sustained, and the questions raised on demurrer are certified to this Court.

The plaintiff, U. G. Weekley, conveyed to his son, H. E. Weekley, a tract of sixty-two acres of land by deed undated, but acknowledged April 2, 1927, and in that deed he made the following reservation: "Excepting however U. G. Weekley the grantor in the above deed reserves the One-half interest of gas, oil and mineral right, during his natural life at which time the above reserved right shall be transferred to H. E. Weekley and his heirs."

On December 29, 1936, H. E. Weekley leased the land involved to Glenn W. Roberts. The lease is in the usual form, and provides, among other things, for the payment of one-eighth of the amount received from the sale of gas and gasoline. On April 15, 1937, Roberts assigned a one-half interest in said lease to Carnegie Natural Gas Company; and the bill alleges, on information, that he later assigned an additional one-fourth interest therein to said company, and the remaining one-fourth interest to West Virginia Gas Corporation, both parties defendant. Roberts is not made a party to the suit, and, consequently, no decree binding upon him could be made in the case, unless and until he is made a party. A like allegation in the bill avers that J. E. Cunningham acquired from H. E. Weekley an interest in the oil and gas royalties in the land in question, and Cunningham is made a party to the suit but has made no appearance. On September 23, 1942, the plaintiff, U. G. Weekley, executed an oil and gas lease to West Virginia Gas Corporation, which is substantially in the same form as the lease executed by H. E. Weekley. Neither of these leases makes reference to the other, and each of the lessors assumes to lease the property as if he were ab-

solute owner thereof. The leased property was drilled under the leases aforesaid, and gas developed in paying quantities. Royalty payments have accrued from the sale of gas and gasoline, and the question is to whom they shall be paid. The position of the plaintiff is that he is entitled to one-half of such royalties during his life, whereas the defendant, H. E. Weekley, contends that plaintiff is only entitled to the interest or income which may be derived from one-half of the royalties during the plaintiff's natural life, and that upon plaintiff's death the corpus thereof shall be paid to him, H. E. Weekley.

A life estate is "a freehold estate not of inheritance, which is held by the tenant for his own life or the life or lives of one or more other persons, or for an indefinite period which may endure for the life or lives of persons in being, and not beyond the period of the life". 1 Bouvier Law Dictionary, Title "Estate for Life"; 4 Judicial Dictionary Digest, Va. and W. Va. 2619. "A life estate may be created by a reservation as well as by grant". *McDougal* v. *Musgrave*, 46 W. Va. 509, 33 S. E. 281. In order to create a life estate no particular words are now necessary. Any language in a conveyance which sufficiently shows the grantor's intention will suffice. *Gibney* v. *Fitzsimmons*, 45 W. Va. 334, 32 S. E. 189; *Uhl* v. *Ohio River R. R. Co.*, 51 W. Va. 106, 41 S. E. 340; *Waldron* v. *Coal Co.*, 61 W. Va 280, 56 S. E. 492; *Irvin* v. *Stover*, 67 W. Va. 356, 67 S. E. 1119. Any type of minerals in place is a part of the realty. *Williamson* v. *Jones*, 39 W. Va. 231, 19 S. E. 436. Therefore, a life estate in minerals may be created to the same extent as if there were no separation thereof from the surface.

The position of the defendant, H. E. Weekley, is that the reservation quoted above does nothing more than reserve to U. G. Weekley a life estate in the gas, oil and minerals in place. If this position be correct, then the law appears to be clear as to the rights of a life tenant. If, at the time of the creation of the life estate, either by grant or reservation, there is an open mine on the property to which the reservation relates, then the life tenant is

entitled to the rents and royalties derived therefrom during his life. *Koen* v. *Bartlett,* 41 W. Va. 559, 23 S. E. 664; *Alderson, Admr.* v. *Alderson,* 46 W. Va. 242, 33 S. E. 228; *Bramer* v *Bramer,* 84 W. Va. 168, 99 S. E. 329; *Minner* v. *Minner,* 84 W. Va. 679, 100 S. E. 509; 33 Amer. Jur. 832-4. Oil and gas in place is a part of the land and the tenant for life may work an open mine to develop the same to exhaustion. *Williamson* v. *Jones, supra.* On the other hand, where property, or an interest in property, is held for life, and after the life tenancy begins, there is development, not authorized under any lease or authority in existence at the beginning of the life tenancy, the life tenant is only entitled to interest on the royalty during the continuance of the life estate, and the corpus of the royalty will go to those who take as remaindermen. *Wilson* v. *Youst,* 43 W. Va. 826, 28 S. E. 781; *Ammons* v. *Ammons,* 50 W. Va. 390, 40 S. E. 490; *Eakin* v. *Hawkins,* 52 W. Va. 124, 43 S. E. 211.

We do not understand that the plaintiff questions the principle above announced. We understand him to concede that if the reservation in question does nothing more than create a life estate in the gas, oil and minerals in place, then he is only entitled to the interest or income on royalties during his natural life. But he contends that while the reservation may create a life estate in said minerals in place, it does something more: namely, creates an incorporeal right to the rents and royalties derived from the development of said minerals during his natural life, which entitles him during such period to one-half of all royalties accruing from such development, and creates a right under which a mine opened under lease from all parties in interest may be treated as an open mine. In this connection we understand the parties to admit that there is no ambiguity in the reservation under consideration. The question is solely one of application of the words employed therein.

We prefer to state the plaintiff's position in the language used by him in his bill. This position is stated in Paragraphs IX and X thereof, which we quote:

"Your plaintiff is advised, believes and says that, under and by virtue of the reservation and exception contained and written in, and made by his said deed to said Harley E. Weekley, and according to the tenor, terms and true intent and meaning thereof, he expressly retained and reserved unto himself, for and during the period of his natural life, all of the several rights, powers, uses and benefits, incident to, adhering in, attendant upon and pertaining to, one-half of the petroleum oil, natural gas and other minerals, on, in and under the said tract of land, among which are rights to produce and market them, or any of them, in their entirety, jointly with said Harley E. Weekley or his assigns, or, jointly with said Harley E. Weekley or his assigns, to cause them to be produced by other persons, under either a lease jointly executed by your plaintiff and him or his assigns, or leases separately executed by them, and in either or any of such cases, to take unto himself, in absolute, unqualified, unconditional, unlimited, sole and exclusive right and ownership, the full and equal one-half of the issues and profits so to be derived from such mining operations on said land, within, for and during the natural life of your plaintiff; and your plaintiff did thereby so retain and reserve unto himself, for and during his natural life, the incorporeal rights aforesaid, in and to such one-half of the said oil, gas and other minerals in said land, and, in addition thereto, by necessary or legal implication, may have retained and reserved unto himself, estates for his life in the said minerals, but, if so, such implied life estates, do not, in law or fact, preclude retention by, or reservation to, your plaintiff, of the said incorporeal rights in and to the said oil, gas and other minerals, expressly created, provided, reserved and retained as aforesaid, which are in addition to and extend beyond the rights legally incident to mere estates for life in the said oil, gas and other minerals in place.

"And your plaintiff is further advised, believes and says that the said two leases of said land, for oil and gas purposes, are equivalent in law and effect, to a lease thereof for said purposes, jointly

executed by your plaintiff and said Harley E. Weekley, and their wives, to the said leases, and that your plaintiff is entitled, in absolute right, as aforesaid, to one-half of the net gas and gasoline royalties accrued under the said leases, from said land and well and hereafter to accrue; and that, if life estates in said oil, gas and minerals, were impliedly created in your plaintiff, by the said reservation and exception, the said well on said land, drilled and operated, as aforesaid, is and was, under said reservation and exception and within the meaning of the law, a mine opened on said land and in said gas, at and before the beginning of such life estate therein, if any there be."

It is obvious that the plaintiff's case rests on the use of the word "right", which, in view of the connection in which it is used, we interpret as meaning "rights", and the reservation in question, therefore, relates to "gas, oil and mineral rights". If the reservation had been one of "gas, oil and minerals" alone, it is clear that only a life estate therein would have been created or reserved; and we have indicated the law applying to such situation. Therefore, the question to be decided is whether the use of the word "right" makes the reservation more than an ordinary life estate.

We do not think it will be questioned that a conveyance or reservation of the "gas, oil and mineral rights" in a tract of land, without limitation, would carry a fee simple estate. A conveyance or reservation of the right to use or exploit the minerals in land is usually held to be a conveyance or reservation of the absolute property therein. *List* v. *Cotts,* 4 W. Va. 543; *Higgins* v. *Coal Co.,* 63 W. Va. 218, 59 S. E. 1064; *Hale* v. *Grow,* 88 W. Va. 173, 106 S. E. 409. In the case last cited, point 6 syllabus, reads: "A clause in a deed conveying a tract of land, which, in terms, reserves the right to all oil, coal and other minerals taken from the land, with the privilege of entering thereon and obtaining the same and binds the grantor to pay the grantee, as rental, one-tenth of such

minerals, if any should be obtained, constitutes an exception and retention of the title to minerals in place." The reservation of "the right to all oil, coal and other minerals" is no different, as we see it, from a reservation of "all gas, oil and mineral rights". In the body of that opinion the Court said: "The right to all oil, coal and other minerals is expressly reserved. Obviously, 'right' may mean title". The word "right" is a generic term, and is closely associated with, if it is not actually synonymous with, title. We make conveyances of all right, title and interest. The use of the word "right" in connection with any specific property ordinarily connotes claim or title thereto. In *McGraw* v. *Lakin*, 67 W. Va. 385, 68 S. E. 27, the meaning of the term "mineral right" was discussed at length. In that case certain minerals were assessed to Cofran and McGraw as "mineral right". The property was returned delinquent for nonpayment of taxes, resulting in a tax sale and conveyance thereof. An attempt was made to set aside the deed and, among other things, it was contended that the assessment of the property as "mineral right" was uncertain and indefinite. In answer to this contention, Judge Brannon, speaking for the Court, said: "Now what do these words import to the common understanding? I answer, that they signify title or right to all that is mineral in the land. What otherwise should the entry say? Should it be minerals? What would that indicate except right and title to the minerals? I do not see how it could be plainer or more definite * * *". He then quotes from a standard author to the following extent: "So these incorporeal rights to mine are sometimes described merely as mining rights, though that term may include licenses and the rights of the owner of the minerals. * * * The rule is laid down broadly that a reservation of minerals or mining rights is to be construed as a grant, and this may be taken to apply equally to an exception". The grant or reservation of rental or royalty to be derived from minerals is, in law, a grant or reservation of the minerals in place.

*Toothman* v. *Courtney*, 62 W. Va. 167, 58 S. E. 915; *Paxton* v. *Oil Co.*, 80 W. Va. 187, 94 S. E. 472. For a stronger reason a grant or reservation of the "right to all oil, coal or other minerals" or "gas, oil and mineral right" should be construed to convey or reserve the minerals in place.

If the language of a deed be unambiguous, and the language employed has a common and accepted meaning, there would seem to be no reason why we should seek to attach thereto a meaning and interpretation different from that commonly accepted. Where a deed will admit of two constructions, the construction which favors the grantee will be adopted. *Williams* v. *South Penn Oil Co.*, 52 W. Va. 181, 43 S. E. 214. In that case it was held: "It is the safest and best mode of construction to give words, free from ambiguity, their plain and ordinary meaning." The same rule will be adopted where the question in doubt cannot be solved by any other rule or interpretation. *White Flame Coal Co.* v. *Burgess*, 86 W. Va. 16, 102 S. E. 690. We think that in the case at bar the grantor used words which, given their plain and ordinary meaning, reserved to him a life estate in one-half of the gas, oil and minerals in place. Had he intended to reserve a greater interest, he could have done so. He contented himself in using language which left him with such life estate, and we are now asked to depart from accepted and long-established rulings of this Court, and add to the estate reserved something which may or may not have been within the contemplation of the parties, but which certainly cannot be justified by anything in the deed itself.

It is suggested that the deed in question should be so interpreted as to vest some substantial right in the grantor, and that the decree of the trial court, in effect, makes the reservation in question of no value and therefore, in effect, a nullity. We do not so interpret the deed, or the holding of the trial court. The right to incomes derived from royalties is a right having some value, depending on the amount of such royalties. The life tenant was probably entitled to an interest in the

delay rentals, inasmuch as such rentals did not involve waste, such as results from the removal of the corpus of the land, waste being the foundation of the rule which prevents a life tenant from receiving the corpus of royalties from mines opened after his life estate begins. The grantor is supposed to have understood what his rights would be if he reserved, as we think he did, an interest in the oil and gas in place; and the fact that subsequent development of the property, with his consent, may make it apparent that, in his own interest, he should have made a different type of reservation, cannot now be considered in interpreting what he actually did.

The theory of the plaintiff, so adroitly and ably argued by his counsel, is that the use of the word "right" creates in the grantor what is termed an incorporeal right to receive one-half of the royalties in question during his life, in addition to and beyond the life estate which counsel say may have been created. We answer by saying that we are not persuaded that it would be the part of wisdom to permit the engrafting upon deeds, contracts, and other writings, the terms of which are plain, and have come to have a meaning, and received constructions and interpretations, upon which valuable individual and property rights are based, of some undefined incorporeal right, growing out of the thing dealt with in the writing itself, and which the parties thereto have not mentioned in terms. To adopt such a policy would, in our opinion, tend to make written instruments less secure from efforts to make them mean something other than that which the language employed, giving such language its ordinary meaning, clearly indicates was intended.

The right asserted by the plaintiff herein could have been saved to him had he properly worded his deed and reservation. He, in fact, reserved to himself a life estate in one-half of the gas, oil and minerals in place. The language of his deed and the decisions of this Court leave no doubt on that point. That being true, his right as a life tenant, under leases executed after his estate began,

have been so often defined by this Court as to leave no doubt in respect thereto. The proper construction of the deed, as to the estate reserved, being clear; and the rights of the grantor, treating him as a life tenant under his reservation, being likewise clear; we think the record before us does not justify the engrafting upon the deed and reservation herein considered any supposed incorporeal right such as the plaintiff asserts.

The ruling of the Circuit Court of Jackson County is affirmed.

*Affirmed.*